# Thaw's Estate.

*Trusts and trustees—Proceeding to ascertain sanity of cestui que trust—Allowance of costs—Distribution of trust funds.*

1. Where the beneficiary under a spendthrift trust is judicially declared insane, it is the right and duty of the trustee to ascertain whether he is of such understanding as would enable him to give a sufficient release for any payment that might be made to him.

2. Where in such case the cestui que trust is subsequently determined to be of sufficient intelligence to understand the nature and character of his act in voluntarily submitting to an examination as to his sanity at the instance of the trustee, he is estopped from contesting expenditures in making the examination which he himself thus encouraged the trustee to make.

3. The beneficiary under a spendthrift trust filed a petition for a rule on the trustee to pay him the accrued income. It appeared that the complainant had been acquitted of a homicide charge in another state on the ground of insanity. The court ordered the proceeding suspended to give the trustee an opportunity to inform itself on the question of claimant's sanity, and the trustee thereupon petitioned the court for the allowance of a reasonable sum from the income of the trust fund for such purpose. A supplemental petition subsequently filed showed that the complainant had submitted to some extent to an examination by experts selected by the trustee, and that such experts had found in the claimant "a condition of constitutional or hereditary mental disorder...... which so disturbed......his mental balance......as to render him abnormal and make it unwise to commit any very large sums of money into his personal charge," but did not find him insane. The court sustained a demurrer to the petition of the trustee, directed that the accrued interest be paid to the cestui que trust and that the trustee be reimbursed for its reasonable legal and other expenses incurred in investigating the question of the sanity of the cestui que trust. *Held,* the court did not err in allowing such reimbursement to the trustee.

Argued Oct. 20, 1915. Appeal, No. 101, Oct. T., 1915, by Henry Kendall Thaw, from decree of O. C. Allegheny Co., Dec. T., 1914, No. 179, dismissing exceptions to trustee's account in Estate of William Thaw, deceased.

100                THAW'S ESTATE.

Before MESTREZAT, POTTER, STEWART and MOSCHZISKER,
JJ.   Affirmed.

Exception to trustee's account.   Before TRIMBLE, J.
The facts are stated in the opinion of the Supreme
Court.

The court dismissed the exceptions.   Henry Kendall
Thaw appealed.

*Error assigned* was the decree of the court.

*William A. Stone,* of *Stone & Stone,* for appellant.

*Thomas Patterson,* of *Patterson, Crawford, Miller and
Arensburg,* with him *Chantler, McClung & Alexander,*
for appellee.

OPINION BY MR. JUSTICE STEWART, January 3, 1916:
The appellant comes before us in his own name and in
his own right, contesting in his own behalf an order and
decree of the Orphans' Court of Allegheny County con-
firming the account of his trustee, in which credit is
claimed for certain disbursements which appellant in-
sists were improperly allowed.   These disbursements
were made under unusual conditions; not pursuant to
any order of the court; nevertheless, as will appear later
on, with the implied consent and approval of the court.
It is not complained that the disbursements were dispro-
portioned to the services which they procured; the com-
plaint simply is that these services were procured and
rendered in the interest of the trustee, for its own pro-
tection against a danger or risk which it had no reason
to apprehend.   These were the facts.   Under the last
will of William Thaw, deceased, who died in 1889, the
Fidelity Trust Company, appellee, was made trustee in
a spendthrift trust created by the will, in which the ap-
pellant, Henry Kendall Thaw, was made a life bene-
ficiary.   The principal of the trust fund amounted to

nearly a half million dollars, and the appellant was entitled to be paid the income and interest derived therefrom semi-annually. In 1908 the appellant was regularly indicted and tried in the State of New York on a charge of felonious homicide. He was found not guilty because of insanity at the time of the commission of the offense, and, under the laws of the State of New York, he was thereupon committed by the court to Matteawan State Hospital, there to remain until discharged by due course of law. While he was thus confined, 10th of July, 1913, he caused to be presented to the Orphans' Court of Allegheny County, his petition setting forth that during the five years last past the trustee had not paid him any part of the income, that he had made a demand of the trustee for the sum of $30,000, a sum well within the accumulations of interest then in the hands of the trustee, that said trustee had refused his demand, and praying that the court order payment of the same. Whereupon a rule issued to show cause why such order should not be made. The trustee answered admitting the material allegations in the petition, but alleging that the refusal on its part to comply with the demand of appellant was because of the fact that he had been committed to Matteawan asylum where he still was under judicial finding that he was insane; and having brought such fact to the attention of the court, the trustee submitted to such order as the court might deem proper in the premises. Appellant replied admitting the facts set out in the answer but averring that "he is, and was at the time of filing his petition, sane and capable of conducting his affairs," and asked that the issue of his sanity be certified to the Common Pleas of Allegheny County, of which county he was a citizen. In a supplemental petition he asked that the trustee be required to pay over to him the entire income shown to be in the hands of the trustee. To this supplemental petition the trustee replied that the petitioner was still in custody with the finding of his insanity unreversed. Meanwhile the trus-

tee filed an account of its trust showing the balance of the income in its hands. This balance came before the court for distribution 24th January, 1914. In this proceeding it was agreed by counsel "that the audit was to be confined to the disposition of the balance of $160,-780.50, admitted to be the income on the face of the account filed by the trustee, and further, that the petition of Henry Kendall Thaw pending at No. 328, June Term, 1913, the answer thereto, and all the supplements and amendments to said petition and answer, as also the replication filed therein, should be taken into consideration by the court in the same manner, and with the same effect as if said petition, answer and other pleadings, had been filed in the present case, at the proper time in the course of the audit." After hearing by the presiding judge, 22d January, 1914, the trustee was directed to pay over to the petitioner out of the income the sum of $30,000, the distribution of the balance to be suspended until further order. Exceptions having been filed to this decree the matter came before the full bench, and after hearing it was ordered and decreed, 22d February, 1914, "that the order and decree of 22d January, 1914, be set aside and vacated, and that further proceedings be suspended for a period of sixty days for the purpose of giving an opportunity to those whose interest or duty it may be to do so, to institute proper proceedings for the determination of the question of insanity, and appointment of a committee for Henry Kendall Thaw, and the accountant is directed to give notice by mail to the relations by blood or marriage, of Henry Kendall Thaw, whose addresses are known to it, of this decree." The rule thus issued was duly served. Thereupon the trustee filed another petition setting out this fact, and averring that inasmuch as the duty might rest on the petitioner, under the opinion filed by the court, to make application for the appointment of a commission to inquire into the lunacy of Henry Kendall Thaw, upon failure of his relatives by blood or marriage

so to do, petitioner could only feel justified in beginning such proceeding as it was better informed as to the mental condition of said Henry Kendall Thaw; that with a view of obtaining the necessary information petitioner had selected certain experts in mental diseases to make personal examination and investigation of the subject, and report their conclusion; that conducting such examination would be attended with considerable expense, concluding with a prayer that a reasonable sum be allowed it out of the income for such purpose. Thereupon a citation issued directed to Henry Kendall Thaw to show cause why the order prayed for should not be granted.  A supplemental petition of the trustee followed, setting forth that the said Henry Kendall Thaw, in obedience to the suggestion contained in said order of court, had submitted to some extent to an examination by the experts the petitioner had selected, and that these experts had reported as follows: "The alienists sent by the Fidelity Title and Trust Company, viz, Dr. Walker, of Pittsburgh; Dr. Wholey, of Pittsburgh, and Dr. Farrar, of Trenton, all report that they find in the patient a condition of constitutional or hereditary mental disorder, showing itself in an exaggerated sense of self, which so distorted, or unsettled the mental balance, or perspective, as to render him abnormal, and make it unwise to commit any very large sums of money into his personal charge." This petition further averred that under the report of the experts it was justified in refusing further payments of income and instituting proceedings for the purpose of having the question of the sanity of Henry Kendall Thaw judicially determined, concluding with a prayer for an allowance from the estate sufficient to cover the expense of taking the testimony of the experts and others, the costs, counsel fees, etc., necessary in connection with the contemplated proceedings in lunacy.  Again a citation was awarded directed to Henry K. Thaw, who caused a demurrer to be entered to the petition, which was disposed of by the

court in an opinion filed, from which we make the following extracts:

"It is not alleged in the petition that Henry Kendall Thaw is a lunatic nor do the alienists find that he is. Their conclusion is only that his mental condition is such as to 'make it unwise to commit any very large sums of money into his personal charge.' This much may be said of many persons to whom distribution is made in this court of large sums of money, but it does not constitute lunacy, nor does it justify the trustee in entering lunacy proceedings. The primary duty, if any exists here, is upon the next of kin to institute such proceedings and this trustee has done its full duty in the premises. The demurrer is therefore sustained, the petition dismissed at the cost of the estate, and distribution will be made to Henry Kendall Thaw of the amount due him. The trustee to be reimbursed for its reasonable legal and other expenses incurred in this matter out of income hereafter accounted for." A decree followed distributing to Henry Kendall Thaw the entire balance of income, less expenses incurred by the trustee in connection with the proceedings above recited. From so much of the decree as allows reimbursement to the trustee for the expense incurred this appeal is taken. Without this somewhat lengthy statement of the facts and history of the proceedings, the features of the case which we regard as controlling might not at once be apparent.

It was neither more nor less than common prudence for the trustee after knowledge of the fact that the appellant had been judicially declared a lunatic and was held in restraint in consequence, to withhold from him the semi-annual payments of income. Payment to him thereafter, so long as his mental disability remained, might well have been imputed as negligence, notwithstanding the fact that the lunacy had been declared in the course of a criminal trial in a foreign state. It was the knowledge of this fact that put the trustee upon notice, and it could not thereafter continue its payments

without incurring risk itself and imperiling as well the estate which it was its highest duty to protect and conserve. When appellant, five years after his commitment and while still in custody, asked the court to order the trustee to pay, the trustee represented to the court the actual facts as it had ascertained them to be, submitted itself to the further order of the court, and so held itself, in a good faith not questioned, throughout the entire proceeding. At no time did it assume a hostile attitude toward the appellant. In view of the admitted facts it had a right to know whether its cestui que trust was of such understanding as would enable him to give a sufficient release and acquittance for any payment that might be made him; and having in mind the ultimate beneficiaries in the trust and its duty to them, it was bound to know this before acting. In proposing an inquisition of lunacy to determine appellant's condition of mind, the trustee was but repeating a request made by appellant himself in his first petition to the court, and was acting, as it had reason to believe, upon a suggestion made in an opinion filed by the court. It was in this connection that an allowance was asked out of the estate to meet the expense that would be incurred. It was the report of the alienists employed by the trustee that halted the inquisition, the court holding that no sufficient ground had been shown for directing such an issue, and no reason appeared why appellant should not receive his money. Distribution on the account was therefore proceeded with. The amount expended by the trustee in connection with the examination of appellant, amounting to $7,353.70 was allowed.

Here then we have an expense incurred for a purpose that failed, no inquisition ever having been instituted. That it was incurred at least with the implied approval of the court, and in the best of faith, there can be no doubt from the pleadings and admissions in the case. Were there nothing else in the case we might well be justified in applying the rule actus curiæ nemini facit

injuriam, and end the controversy. But there is more. The appellant with full knowledge and understanding of what the purpose was in having personal examination made of himself, voluntarily submitted to such test and assisted in it, only in the expectation that it would result to his advantage in the pending proceeding. He then became a party with the trustee in the proceeding, by his conduct encouraging the trustee to make the expenditure that he would now repudiate; for, except as he had voluntarily submitted, there could have been no expert examination and consequently no expenditure. If he was when so doing of sufficient intelligence to understand the nature and character of his act, he is and should be estopped from contesting an expenditure which he himself encouraged the trustee to make. He has persisted in saying in the course of his pleadings, that at the time he first asked the intervention of the court, he was of sound mind, capable of managing his business affairs, and that he has been so continuously since. Now when he is no longer confined and is acting for himself, he withdraws nothing, but asks the same court that has, upon full consideration of all the facts, ordered that he be paid the entire income, because it had not been shown that he is incompetent to manage his affairs, to refuse reimbursement to the trustee for expenditures made by it in eliciting the facts with regard to himself upon which the court so largely relied in making its order for his relief. If he was sufficiently sound in mind to warrant the court in ordering that he be paid the arrearages of his income, we see no reason why he should not be regarded as of sufficient soundness to be estopped by his acts and conduct in submitting to the examination by the experts whose compensation he now complains of. For the reasons stated the exceptions are dismissed and the decree is affirmed.