## Miller's Estate.

Argued December 7, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Paul A. Mueller,* of *Windolph & Mueller,* for appellant.

*Robert Ruppin,* for appellee.

OPINION BY MR. JUSTICE STERN, January 9, 1939:

In an adjudication filed December 31, 1921, of the Estate of Isaac Miller, Deceased, the Orphans' Court of Lancaster County awarded to the Peoples Trust Company, as Trustee for Samuel J. Miller, the sum of $20,000. Decedent had been engaged in the junk business, and on December 21, 1921, his three children, of whom Samuel J. Miller was one, caused a corporation to be formed to take over this business. The other two children each subscribed for one-third (200 shares) of the capital stock, and the Peoples Trust Company, Trustee for Samuel J. Miller,—not only with his acquiescence and consent but at his request,—also subscribed for 200 shares, to be accepted by it in lieu of the $20,000 cash awarded to it as trustee. Samuel J. Miller, together with the wife of decedent and the other children, who had a contingent remainder interest in this trust estate,[*] executed a written agreement approving the investment. He also executed his bond to the Peoples Trust Company, with the other children and his mother as sureties, agreeing to indemnify it from any surcharge or loss by reason thereof. Several years later, the Peoples Trust Company having merged and consolidated with the Farmers Trust Company of Lancaster, he and the other children executed another agreement in writing confirming the transaction and releasing the latter company,

---

[*] The trust for Samuel J. Miller was to last until his marriage. If he married in violation of certain conditions specified in the will, the trust fund was to go to the other child or children who married in accordance with the conditions.

the successor trustee, of all claims for loss that might be sustained thereby.

The corporation did not pay any dividends and in 1931 was adjudicated a bankrupt. Samuel J. Miller never received any income from the trust estate, and the principal was wholly lost. The Farmers Trust Company filed its account as successor trustee in 1936, to which Samuel J. Miller filed exceptions. The court below sustained these exceptions and surcharged the trustee in the sum of $20,000, the original principal of the fund, together with interest or "income" at the rate of five per cent per annum from December 31, 1921.

In the will of Isaac Miller there was a direction that the income to be paid to his wife and children, and the principal in the hands of the trustee, should be free and clear of the debts and contracts of the beneficiaries and of all levies, attachments, and executions. There is a grave question whether these spendthrift trust provisions were intended to apply to the trust for Samuel J. Miller with which the present controversy is concerned, or only to another trust established by the will. For purposes of this appeal, however, we shall assume that Samuel J. Miller is correct in his contention that the trust of $20,000 was a spendthrift trust. Upon that foundation he builds the structure of his argument, which is to the effect that, although he himself requested the investment of the fund in the stock of the corporation, did not claim income from the trustee during the fifteen years between the time when the investment was made and the filing of the trustee's account, and signed the agreements and executed the bond of indemnity previously mentioned, nevertheless the trustee was without power to make such an investment and should be surcharged, because, this being a spendthrift trust, he, the beneficiary, was not estopped by his having requested the making of the investment from now attacking it.

It need scarcely be stated that such a claim is not only without sanction of law, but violates instinctive prin-

ciples of morality and fair dealing. It apparently arises from appellee's erroneous impression that, because the beneficiary of a spendthrift trust cannot terminate it (*Harrison's Estate*, 322 Pa. 532), nor, by agreement with the trustee or otherwise, modify or ameliorate its restrictions, he is likewise excused from the legal consequences of requesting or acquiescing in the selection of investments to be made by the trustee. It is hornbook law, as expressed in *Macfarlane's Estate*, 317 Pa. 377, 382, 383, that "A competent beneficiary who with full knoweldge of the facts and of his rights expressly consents to or affirms an investment by the trustee cannot, in the absence of fraud, thereafter question its propriety." In this respect there is no difference between the beneficiary of a spendthrift trust and any other trust.

In Restatement, Trusts, section 216(e), it is said: "Although the interest of the beneficiary is not transferable by him or subject to the claims of his creditors, he cannot hold the trustee liable for an act or omission of the trustee as a breach of trust if he consented to it, except . . . [the exceptions enumerated have no relevancy to the present case]. Thus, if with the consent of the beneficiary the trustee makes an investment which is not authorized by the terms of the trust, . . . the beneficiary cannot hold him liable for breach of trust, although the trust is a spendthrift trust."

In Griswold on "Spendthrift Trusts," section 305, it is stated: "Various questions may arise in the course of the administration of a spendthrift trust as to the effect of the consent of the beneficiary. May the beneficiary hold the trustee liable for an act or omission which was done at the beneficiary's request or with his consent? . . . Where the beneficiary is an adult and *sui juris,* there would seem to be no reason why he should not be bound by his conduct here as much as in any other situation. . . ."; and in section 307: "It is a rule of general application with respect to ordinary trusts that a beneficiary cannot hold the trustee liable for an act or

omission as a breach of trust if the beneficiary consented to it. This principle is also generally held to be applicable to spendthrift trusts. Thus, if a trustee makes improper investments, or wrongfully disposes of a part of the trust property, or wrongfully delegates his authority, or commits other breaches of trust, the beneficiary may not hold him liable if he has given his consent to what was done."

In *Perkins's Trust Estate*, 314 Pa. 49, there was a spendthrift trust for a beneficiary who persuaded the trustees to invest a portion of the funds in certain mortgages which ultimately consumed a large part of the trust estate. The court, in holding that the trustees could not be surcharged with this loss, quoted with approval the opinion of the court below in banc as follows: "The principle involved in this case is well summed up by the auditing judge when he says that it is 'unfair and unjust to permit a person to induce the making of investments—however unwise—and then to permit him, or any person or persons claiming through or under him, to repudiate such investments and to benefit thereby.'"

In *Thaw's Estate*, 252 Pa. 99, the trustee of a spendthrift trust made expenditures out of the income which were, perhaps, technically illegal, but it was held that the beneficiary could not complain of such disbursements because, as the court said, (p. 106) : "He then became a party with the trustee in the proceeding, by his conduct encouraging the trustee to make the expenditure that he would now repudiate; for, except as he had voluntarily submitted, there could have been no expert examination and consequently no expenditure. If he was when so doing of sufficient intelligence to understand the nature and character of his act, he is and should be estopped from contesting an expenditure which he himself encouraged the trustee to make."

Appellee relies upon *Pray's Appeals*, 34 Pa. 100, where two married women, beneficiaries of sole and separate use trusts, requested of the trustee that certain invest-

ments should be made, and subsequently ratified them. The investments were nevertheless condemned by the court as improper and the trustee surcharged. In that case, however, the cestuis que trustent were in total ignorance of material facts concerning the investments, and no effort was made by the trustee to inform them of the actual situation; the case was distinguished upon that ground in *Macfarlane's Estate*, 317 Pa. 377, 383. In the present case Samuel J. Miller was thoroughly conversant with the investment which he requested the trustee to make. Indeed, he, together with his brother, actually conducted and managed the business from the time of its incorporation until its bankruptcy.

The decree of the court below is reversed, and the record is remitted with instructions to confirm the account of Farmers Trust Company of Lancaster, successor trustee, as filed; costs to be paid by appellee.