## Swoyer Estate

*Donald L. LaBarre*, for accountant.
*Edwin K. Kline, Jr.*, for objector.

GEARHART, P. J., March 7, 1957.—We have for audit the first and partial account of Stanley E. Swoyer, surviving executor under the last will and testament of Ellwood D. Swoyer, deceased.

Ellwood D. Swoyer died December 27, 1938. His will was duly probated on January 5, 1939, and letters testamentary were granted to Ellen C. Swoyer, his widow, Daniel W. B. Swoyer and Stanley E. Swoyer, his sons. Two of the three executors are dead. Daniel W. B. Swoyer died February 17, 1955, and letters testamentary were granted to his widow, Hazel B.

Swoyer, who under his will was the sole beneficiary. As executrix of her husband's will, she has filed objections to the present accounting. Ellen C. Swoyer, mother of Daniel W. B. Swoyer and Stanley E. Swoyer, died January 7, 1956. She was the life tenant under the will of her husband, Ellwood D. Swoyer, and her death occasioned the filing of this account.

The objections have been reduced to two in number. One of the objections relates to the payment of a demand note payable to Ellen C. Swoyer, said note having been signed by Ellen C. Swoyer, Stanley E. Swoyer and Daniel W. B. Swoyer, executors. Objection is also lodged to the payment by this estate to the estate of Ellen C. Swoyer of the sum of $2,752.47. This amount represents funds necessary for the care and maintenance of Ellen C. Swoyer over and above the income from this estate and her own estate. Moneys advanced from the corpus of her personal estate were charged as a claim against the estate of Ellwood D. Swoyer.

Testator in his will gave his partnership plumbing business known as "E. D. Swoyer & Sons," to his sons, Stanley E. Swoyer and Daniel W. B. Swoyer. As to his residuary estate, he provided:

"4. All the rest, residue and remainder of my property, wheresoever situate and whatsoever kind, I give, devise and bequeath unto my beloved wife, Ellen Swoyer, for and during the term of her natural life, and after her decease, I give, devise and bequeath the same unto my said two sons.

"5. Should the income of my said residuary estate at any time be insufficient for the comfortable maintenance and support of my said wife, I give my Executors power, if necessary, to use such portion of the principal as they may deem proper for that purpose, it being my desire that my said wife shall be comfortably

and properly supported and maintained, both in sickness and in health as long as she may live."

The testimony shows that at the time of testator's death the estate needed cash to pay the funeral bills, debts, taxes and costs of administration. To meet this, $2,000 was advanced by Ellen C. Swoyer personally and a demand note dated January 23, 1939, to cover such sum was executed by the executors as stated hereinbefore.

In order to understand the nature of the objections, it is necessary to recite the facts relating to the management of the estate. During the lifetime of the three executors the estate was managed in an amicable manner in which all three participated. Stanley E. Swoyer, by reason of special training, kept the books. They are in excellent shape and their accuracy is not questioned. The procedure in handling the affairs of the estate and the personal affairs of Ellen C. Swoyer was as follows: There was one check book for both accounts, that is to say, the personal income of decedent's widow was blended with the income from this estate in one checking account, from which the executors paid the cost of supporting and maintaining the widow. In addition to the checking account, there were two separate sets of books, one set for the estate of Ellwood D. Swoyer, deceased, and the other set for Ellen C. Swoyer's personal assets. All expenses of the widow were paid. The testimony indicates that if the income of the estate and the income of Ellen C. Swoyer's assets were insufficient to meet expenses, and if there was no cash available in the principal account of the Ellwood D. Swoyer estate, then cash principal of Ellen C. Swoyer was used. And to the extent that her principal was used, the same was entered as a credit on her set of books and a corresponding debit was entered on the books of the estate. This aggregate credit amounts

to $2,752.47, to the payment of which objection is now made by Hazel B. Swoyer.

This plan of management was agreeable to the three interested parties and all participated in it. All checks were signed by the two sons, Stanley E. Swoyer and Daniel W. B. Swoyer, and each year an informal accounting was shown to Daniel W. B. Swoyer and approved by him. Shortly after the death of testator, it was agreed by the accountant and his brother, Daniel W. B. Swoyer, that in maintaining the widow they would not use the assets of decedent's estate except such bonds and mortgages which fell due or were called. This arrangement was made in the belief that some day the two boys would divide between them the estate of their mother as well as that of their father. As matters eventuated, the son, Daniel W. B. Swoyer, died before his mother, and after the death of Daniel W. B. Swoyer, his mother rewrote her will, giving her entire estate to her other son, Stanley E. Swoyer. This is the rub in the matter, for if the two items to which the daughter-in-law makes objection are paid, it will deplete this estate by that amount. The result will be that the amount which the objector's husband's estate will receive from this estate will be correspondingly reduced.

The objector clearly recognizes that the will authorized the executors to invade the principal of the estate for the purpose of support and maintenance of the widow. It is acknowledged that the income was insufficient to maintain and support the widow. She argues, however, that the principal of this estate was invaded only by bookkeeping entries and not by actual withdrawals from the corpus and therefore it is now too late for the surviving executor to charge this estate with what the books show the estate of Ellen C. Swoyer to be entitled to.

The weakness of this argument is that what was done in this estate was done with the full knowledge and active participation of the objector's husband. Whatever rights the objector has are derivative. Her rights can rise no higher than those of her husband. If he were living, certainly it could not be reasonably contended in the absence of fraud, and none is even here suggested, that he could repudiate what he actually participated in himself.

Thus, from the date of testator's death on December 27, 1938, until the date of his own death on February 17, 1955, a period of over 15 years, the objector's husband not only consented to the administration of this trust, as indicated, but he was an active party to it. He knew all of the circumstances pertaining to the advancement for his mother's comfortable care and support and he was familiar with the books of the account. He raised no objection in his lifetime to the same.

It has been held that a beneficiary who, having full knowledge of the facts and of his rights, consents to or affirms advancements by a trustee, cannot thereafter question the propriety irrespective of the nature of the trust in the absence of a fraud.

In Miller's Estate, 333 Pa. 116, the beneficiary of a spendthrift trust induced the trustee to invest in an illegal investment. The corporation went bankrupt. The beneficiary was unsuccessful in his attempt to surcharge the trustee. Mr. Justice Stern, writing the opinion and referring to Perkins' Trust Estate, 314 Pa. 49, stated, page 120:

". . . The court, in holding that the trustee could not be surcharged with this loss, quoted with approval the opinion of the court below in banc as follows: 'The principle involved in this case is well summed up by the auditing judge when he says that it is "unfair and un-

just to permit a person to induce the making of investments—however unwise—and then to permit him, or any person or persons claiming through or under him, to repudiate such investments and to benefit thereby" '."

By analogy, that is exactly what the objector in this case requests the court to do. She would repudiate all that her husband as executor had done in this estate for 15 years. This is palpably unfair.

In Wilbur's Estate, 334 Pa. 45, parents willed property to each other for life; the remainder to sons with a general power of appointment. The father predeceased the mother by 10 years. A son who survived his mother by eight years, demanded no formal accountings, but from time to time received informal accountings. On the occasion of the audit of the account in the estate, the son's widow, who was a beneficiary under his will, filed objections. The Supreme Court held that the daughter-in-law was barred by laches and evidence of acquiescence by her late husband in the trust administration.

Likewise, in Coulter Estate, 379 Pa. 209, 218, it was held that the long delay in challenging the trust administration, as well as the acquiescence by the beneficiary, barred the objector.

In this case the trustees exercised their discretion in paying the amounts now the subject of disputes. Certainly the widow received the benefit of the payments. That the money was not actually taken from this estate is of little moment under the circumstances. The method pursued by the parties has actually operated in favor of this estate, for the reason that had the amounts been taken from the corpus of this estate there would have been less income produced and consequently there would have been greater necessity to invade the principal of this estate for the maintenance and support of the widow. Again, it was this estate

under the will of testator that was responsible for the maintenance and support of the widow, and not the widow's personal estate. The income of the widow's estate which was spent on her maintenance was in relief of this estate, which indirectly has inured to the benefit of this objector. We repeat that the bookkeeping arrangement was by agreement of all parties, and it is clear from the books that this estate was to be charged for the amount of principal expended from the widow's estate.

Here there is no fraud or chicanery. There is no juggling of the accounts. As it turns out, by giving effect to the books of account, some benefit inures to the accountant. However, this is fortuitous. It might very well have worked the other way if the accountant had died before his brother. The accident of the death of the objector's husband before his mother and her subsequent changing of the will in favor of the surviving son cannot affect the acts of the parties. The parties themselves recognized that the mother's estate was entitled to a credit. Their accounts are conclusive.

Even in the absence of agreement by the parties, the court would be constrained to allow the credit in favor of the widow's estate. In the late case of Short Trust, 6 D. & C. 2d 444, the applicable principle as stated in Richey's Estate, 251 Pa. 324, 328, was quoted, viz.:

". . . where a person has two funds to draw upon for living expenses, one his own individual estate, and the other from the estate of another in which he has a life interest with power to consume, in the absence of evidence to the contrary, there is a presumption that he would expend the latter before drawing upon the former. . . ."

Accordingly, the objections are dismissed and the account is confirmed. Distribution will be made as set forth in the suggested revised schedule of distribution, i.e., paying first the remaining unpaid debts in the

aggregate amount of $5,500, and distributing the balance one-half to Stanley E. Swoyer, and one-half to the Estate of Daniel W. B. Swoyer.

This decree will become final unless exceptions are filed within 10 days herefrom.