## Heyl Estate.

Argued October 3, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Robert T. McCracken,* for appellant.

*William N. Trinkle,* with him *Frank F. Truscott,* for appellee.

OPINION BY HIRT, J., December 13, 1944:

By the will of George A. Heyl, life interests in a trust were established for the benefit of his two daughters, Kate Heyl Peace and appellant Mathilde Heyl Jackson. Under its terms they were to receive the net income on his residuary estate payable in equal shares. The will provided: "I direct that all payments of income to each and every of the beneficiaries hereinbefore named, shall be made to them directly, without the power of anticipation or assignment by them and so that the same shall not be subject to any judgment, decree, attachment, execution, or other process of any court, but the same shall only become and be the property of the beneficiary when actually received by him or her and the trustees shall only be discharged of the same upon the own proper receipt of the beneficiary."

Kate Heyl Peace had persuaded Girard Trust Company, trustee, to build a house for her at the cost of

the corpus of the trust. A two acre tract in Haverford was acquired by the trustee for the purpose and a dwelling house was built on the plot at a total cost of $36,518.36. This amount was carried on the books of the trustee as an investment of the trust in real estate. On December 29, 1930, before the purchase and improvement of the land, Kate agreed in writing with the trustee: "that there shall be charged against my share of the income from my father's estate interest at six per cent on the total amount paid for the above property, and also taxes, insurance and repairs, ...... that may be made on the property, the interest to be paid on the total cost in quarterly payments, and the taxes, insurance and repairs to be taken out of my income as they shall from time to time be paid." By the agreement, in the event of her removal from the house, Kate in effect guaranteed that the rental income of the trust from the property would at least equal interest on the investment, together with all taxes and maintenance costs. She agreed that her share of income from the estate should be charged with any deficiency. This agreement was fully performed for almost 12 years during the period that Kate occupied the premises. By the fall of 1942, because of increased living costs and a shrinkage in the earnings of the trust, she could no longer afford to maintain the house. She vacated it, and surrendered it to the trustee. And on December 3, 1942, by letter to Girard Trust Company, trustee, she revoked her agreement of December 29, 1930, and demanded an equal share of the net income earned thereafter by the estate, strictly in accordance with the terms of the will which established the trust.[1] By this revoca-

---

[1] She wrote in part: "I ...... have been advised that since the Will of my father expressly provides that my income must be paid to me directly or personally, without any power of anticipation or assignment on my part, and on my personal receipt only, the arrangement as set forth in my above mentioned letter in

tion she sought to shift the burden of maintaining the property to the trust estate and, as an incident, to compel her sister Mathilde to bear one-half of the loss of income on the investment as well as one-half of the taxes and other maintenance costs.

The questions on this appeal are raised. on the audit of the second account of Girard Trust Company, trustee, and a supplement to it. In these accounts, $1,958.88 is charged to Kate Peace made up of items of taxes, maintenance of the Haverford property, and interest on the investment in accordance with her agreement of December 29, 1930, all of which accrued *after* the date of her revocation of that agreement. In lieu of exceptions, Kate petitioned the court, in effect, for a declaratory judgment as to her status in relation to the trust and the validity of the above charges in the account. On the issues raised by her petition and the answer of the trustee, the court in effect held: that testator created a

1930, has at all times had the effect only of a revocable power of attorney or authority, at least as to any and all income not actually accrued and received by the Trustees, and that at all times I had the right and still have the right to revoke or rescind the said agreement or arrangement as to my share of any and all future income from the trust. As I desire to be relieved, for the remainder of my life, of the burden which the continuance of the said improvident arrangement would entail, you are hereby respectfully notified that I revoke or rescind. the same absolutely, and I request that, henceforth, during the remaining period of my life, the full share of my income for which my father's Will provides, shall be paid to me personally and directly and upon my own personal receipt for the same only, in accordance with the express terms and provisions of the trust, freed and discharged of the payment thereout of any sum or sums whatsoever for interest on the amount which was invested in or expended for the purposes referred to in my letter to you of December 29th, 1930, or for taxes, insurance, repairs, maintenance, or other charges in connection with the real estate at the corner of Buck Lane and Coopertown Road, Haverford, Pa., therein referred to. Accordingly, my surrender of the possession of said real estate to you as Trustee is hereby confirmed."

spendthrift trust as to both of his daughters; that the agreement of December 29, 1930, in reality was an assignment by Kate of her future interest as beneficiary, in violation of the spendthrift limitation; and that she was within her legal right in revoking her agreement. Accordingly a restatement of the account was ordered charging the estate with the whole cost of maintenance of the property after December 3, 1942, and directing an equal division of the net income for distribution after the charge, between the two sisters.

The Haverford property was bought and developed by the trustee in the exercise of a power contained in the settler's will authorizing investment in real estate. The propriety of the purchase as an investment of the trust under the circumstances well might have been questioned by Mathilde Jackson by objection, if timely. The amount and character of the investment, however, appeared in a prior account of the trustee and she did not object to it at the audit of that account. And although on the audit of the present account she stated that she never approved the investment (this was denied by the trustee) yet over a period of about twelve years she, with full knowledge, accepted her share of the income from it, as paid into the estate by her sister. She did not file any exception to the present account and but for the order here on appeal would have received additional income from the investment. Since she knew of this application of trust funds and accepted benefits from it her affirmance of the investment may be implied. *Rambo's Estate*, 327 Pa. 258, 193 A. 1; *Macfarlane's Estate*, 317 Pa. 377, 177 A. 12. Kate has not questioned the investment, nor could she, since it was made at her request and for her benefit. *Miller's Est.*, 333 Pa. 116, 3 A. 2d 370. Both life beneficiaries at the audit expressly disclaimed any attempt to surcharge the trustee for loss on the investment. Appellant's single effort is to compel her sister to bear the whole of the loss as she agreed. The one question before us, disre-

garding, as we must, the moral issue of fair dealing, is whether Kate Peace was within her legal rights in terminating her agreement.

This clearly was a spendthrift trust. In the will which established it there is "an express provision forbidding anticipatory alienations and attachments by creditors." *Keeler's Estate*, 334 Pa. 225, 3 A. 2d 413. In the execution of a spendthrift trust the concern of the law is not for the donees but to give effect to the will of the donor as he has expressed it. *Riverside Tr. Co. v. Twitchell et al.*, 342 Pa. 558, 20 A. 2d 768. The agreement in question oversteps the limitations of the trust. And although Kate was a party to it, she had the legal right to rescind it. Her agreement in effect was a present assignment of future income and as such was enforceable as to each installment of income after it accrued, but only so long as her direction as to the application of income remained unrescinded. *Keeler's Estate,* supra, citing Restatement, Trusts, 152 (i), states the principle and refers to the generally accepted rule thus: "Such an assignment has the effect of a revocable order to the trustee to pay the income to the assignee ...... Of course, such payments must be made before the assignment is revoked by the beneficiary. The assignment is necessarily simply a revocable power of attorney. This follows from the inalienability of the interest, for an irrevocable assignment would be the equivalent of a transfer of the beneficiary's interest ...... As to any attempted transfer of future income, a purported assignment thereof ...... amounts merely to a direction for payment of the several future sums as they accrue. Any such direction, however, is subject to revocation by the beneficiary at any time in respect to payments not made prior to such revocation."

Although Kate Peace may not question the investment made at her request, she is not estopped from repudiating her agreement which violated the terms of

the trust. "The beneficiary of a spendthrift trust cannot terminate it (*Harrison's Estate,* 322 Pa. 532), nor, by agreement or otherwise, modify it or ameliorate its restrictions": *Miller's Estate,* supra. What she was unable to do irrevocably by agreement cannot result from any estoppel of her against the expressed intention of the testator and his right to dispose of his property as he saw fit.

Decree affirmed at the costs of the trust estate.

KELLER, P. J. and JAMES, J., dissent.