577 A.2d 70

**Archie Harvin MAHAN, et al.,**

**v.**

**Lillie G. MAHAN.**

**No. 21 September Term, 1989.**

Court of Appeals of Maryland.

Aug. 2, 1990.

Stanard T. Klinefelter and Roger D. Redden (Kurt J. Fischer, Richard J. Dumais, Piper & Marbury, all on brief), Baltimore, for petitioner.

Joseph Kenary (Kenary & Clarke, both on brief) Rockville, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL*, JJ.

McAULIFFE, Judge.

On 8 September 1942, Frances Mahan (Frances) established an inter vivos trust. On 6 May 1978, she executed her will, and on 26 June 1978, she died. Persons claiming various interests under the trust asked the Circuit Court for Montgomery County to clarify and define their rights. Displeased with the determination of that court, and subsequently with that of the Court of Special Appeals, petitioners seek further consideration. We now answer certain threshold questions involving the exercise of a power of appointment established by Frances's trust, and involving the attempted modification of the trust by those claiming to be the sole beneficiaries thereunder. We then direct the

---

* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

remand of this case for consideration of the remaining issues that were not addressed by the circuit court because of the initial view it took of the case.

Pertinent parts of the four paragraphs of Frances's Deed of Trust that are significant for purposes of this case are as follows:

2. In the event of the death of the Grantor leaving children, the Trustee is directed to pay one-half of the income to the surviving husband of the Grantor and to expend the remaining one-half of the income upon the support, maintenance and education of any child or children of the Grantor. In the event of the death of the Grantor leaving no children surviving her, the entire income of the trust estate shall be payable to her surviving husband until his death or re-marriage, whichever shall first occur.... In the event of the death of the Grantor and her said husband, the entire income is to be applied to education, support and maintenance of any surviving child or children.

3. In the event that there shall be neither a surviving husband or children of the Grantor, the income shall thereafter be payable to the parents of the Grantor and the survivor of them during their lifetime, and upon the death of said parents and the survivor (there being neither surviving husband or child or children surviving) this trust shall terminate and the principal be paid over to the brother of the Grantor, his heirs and assigns, free, clear and discharged of the trust.

4. The Grantor specifically reserves the right to appoint by her Last Will and Testament both the principal and income of the trust estate hereby created and such testamentary disposition shall supersede any disposition made by this deed. The Grantor specifically reserves the right to revoke the trust hereby created with the consent of her parents or the survivor of them during the first ten years of the trust.

\*　　\*　　\*　　\*　　\*　　\*

7. The said Grantor does hereby declare that the said Trust Estates, both principal and income, are to be for the proper use and benefit of the beneficiaries, as hereinabove set forth, and that both the income and principal payments hereunder shall be paid into the hands of the respective beneficiaries and not into the hands of another whether by their direction or otherwise, so that neither the income nor principal thereof shall be liable to be assigned, transferred, anticipated or hypothecated, and shall not be taken in execution or attachment or in any other manner.

The residuary clause of Frances's will, which became effective when she was survived by her husband, Archie I. Mahan (Archie), provided:

THIRD: In the event that I am survived by husband, ARCHIE I. MAHAN, I give, devise and bequeath my entire estate of whatever character and where situate, unto him, to be his absolutely. In the event that my said husband is not living at the time of my death, then I give my said entire estate unto my son, ARCHIE HARVIN MAHAN, to be his absolutely.

In addition to her husband, Frances was survived by their only child, Archie Harvin Mahan (Harvin).

In February of 1980, Maryland National Bank, as trustee of Frances's trust, joined with Archie and Harvin in executing an agreement that purported to terminate the trust, and to transfer most of the corpus[1] to a new trust to be established by Archie. The agreement recited the mutual concerns of the parties about the proper interpretation of certain provisions of Frances's trust, and reflected their uncertainty about whether Frances's will validly exercised the power of appointment. The avowed purpose of the

---

1. By the terms of the agreement, Archie was authorized to withhold $16,000 from the original trust funds, to use as a partial payment of federal estate tax due by reason of Frances's death, or to use otherwise as he saw fit.

agreement was, therefore, to create a new trust that everyone could agree properly reflected Frances's intent.

Not altogether magnanimously, these three parties further agreed that Frances's brother, L. Claggett Beck, had no interest in the remainder created by Frances's trust. Recognizing, however, that Beck might not agree with their interpretation of the trust, and that he might claim a right to the remainder by virtue of paragraph three of the trust, the parties agreed that the bank would give written notice to Beck of its intention to distribute the corpus of Frances's trust in accordance with the 1980 agreement unless restrained by order of court within 30 days of the giving of notice.

The bank's attorneys wrote to Beck, who was then in California, on 27 February 1980. They apparently enclosed copies of Frances's trust and her will, and informed Beck of their opinion that § 4–407 of the Estates and Trusts Article, Maryland Code (1974) applied so that the residuary clause of Frances's will effectively exercised the power of appointment of the remainder in favor of Archie. The bank's attorneys further informed Beck that, in any event, they were of the opinion that neither he nor his heirs had any claim to the remainder, notwithstanding the provisions of paragraph three of the Deed of Trust. Beck was warned that the bank would therefore proceed to distribute the corpus of Frances's trust to Archie if not restrained by court order within 30 days.

The record does not definitively show whether Beck received the bank's letter, although at a later proceeding before the circuit court, Beck's attorney stated that Beck "did apparently receive notice that something was going on...." In any event, Beck took no action at that time.

The terms of the "new" trust specified by the 1980 agreement, to the extent relevant to this controversy, were: Archie and the bank were to be named trustees; the net income of the trust was to be paid equally to Archie and Harvin, and to the survivor of them; the trustees were

empowered to invade the principal on behalf of either life beneficiary for certain purposes; upon the death of Archie with Harvin surviving, the corpus would be distributed to appointees named in Archie's will, or in default of the exercise of the power of appointment the trust would continue for the life of Harvin, with the power of Harvin to appoint the remainder by will to his children and descendants. The new trust was not to contain spendthrift provisions, and was to be revocable during Archie's lifetime, and thereafter, if it continued, to be revocable by Harvin.

The 1980 agreement also required Archie and Harvin to indemnify the bank for any loss resulting from any claim Beck or another might make under the 1942 trust.

The record does not disclose whether Archie executed a new trust document in accordance with the agreement, or whether the assets of the 1942 trust were transferred from the bank as trustee under the initial trust to Archie and the bank as trustees under the "new" trust. That is relatively unimportant at this stage of the proceeding, because it appears that Archie and Harvin continued to receive the same income payments they would have been entitled to under the 1942 trust, and the bank has refused to distribute the principal until the rights of the parties are finally adjudicated.

Following the execution of the 1980 agreement, Archie married Lillie G. Mahan (Lillie), the respondent. Archie died in 1987, apparently domiciled in Florida, where his estate is being administered. By his will, Archie expressly exercised the power of appointment created by the "new" trust in favor of his estate, and named Lillie as personal representative and as sole residuary legatee. Lillie made demand on the bank for distribution of the trust principal to her as personal representative of Archie's estate. Harvin objected, claiming that the 1980 agreement was ineffective, and that he was entitled to receive the income allowed to him by the 1942 trust. Faced with conflicting claims, the bank refused to distribute the principal, and Lillie sued.

In her action for declaratory relief and to compel transfer of the corpus of the trust, Lillie named Harvin and the bank as defendants. The bank did not answer and did not initially participate in the proceedings. Harvin filed an answer and a cross-claim for declaratory relief, contending that the 1942 trust continued in effect, and claiming entitlement to all the income from that trust for the balance of his life. Harvin also moved for summary judgment. Lillie opposed Harvin's motion and filed her own motion for summary judgment.

After a hearing, Judge L. Leonard Ruben granted Lillie's motion for summary judgment, declaring that by operation of § 4–407 of the Estates and Trusts Article, the residuary clause of Frances's will served to exercise the power of appointment over the corpus of the trust estate in favor of Archie, and thus terminated the 1942 trust and the life income interest of Harvin. The court directed that the bank deliver the assets of the trust to Lillie, as personal representative of the estate of Archie.

Within 10 days of the entry of that judgment, Harvin filed a motion to alter or amend the judgment, and to join a necessary party. In addition to arguing that the result should be changed, Harvin contended that the judgment had the effect of terminating a remainder interest that Beck had been given by paragraph three of Frances's trust, and that this action could not properly be taken without Beck having been made a party. Eight days later, Beck filed a motion to intervene as a matter of right. Lillie and the bank opposed both motions. After a hearing, and without opinion, Judge Ruben denied the motions.

Harvin appealed to the Court of Special Appeals, and that Court affirmed the judgment of the circuit court in an unreported opinion. We granted Harvin's petition for certiorari, and we reverse.

One of the questions we must resolve involves the application of § 4–407 of the Estates and Trusts Article to the facts of this case. That section provides:

Subject to the terms of the instrument creating the power, a residuary clause in a will exercises a power of appointment held by the testator only if:

(1) An intent to exercise the power is expressly indicated in the will; or

(2) The instrument creating the power of appointment fails to provide for disposition of the subject matter of the power upon its nonexercise.

Clause (1) of § 4–407 is not applicable here. Frances's will does not contain an express indication of an intent to exercise the power of appointment reserved by her in the trust document. Clause (2), however, may be applicable. If the 1942 Deed of Trust fails to provide for disposition of the subject matter of the power of appointment upon its non-exercise, the residuary clause of Frances's will operates to exercise that power.

Two additional questions are involved. First, does a proper construction of Frances's trust disclose her intent concerning who should receive the remainder interest upon expiration of the life income estate when her child and/or her husband survived her? And second, if the trust instrument cannot be so construed, does § 4–407 operate with respect to the life interest, or only with respect to the remainder?

■ In examining the first question, it is immediately apparent that the only colorable claim to a remainder interest under the contingency that did occur (the death of Frances with Archie and Harvin surviving) is the claim of Beck. Beck contends that a proper reading of paragraph three of Frances's Deed of Trust, considered in the context of that instrument taken as a whole, demonstrates that Frances intended Beck to take the remainder after the deaths of Archie and Harvin. Beck claims that this intent is apparent because Frances intended the language of paragraph three of her trust to serve as both a successive and a substitutionary designation of her parents as life income beneficiaries, and that her use of the word "thereafter" in

paragraph three when referring to the payment of the income supports this view.

The interpretation advanced by Beck, which Harvin now supports, is the very interpretation that concerned the bank, Archie, and Harvin from the outset. The circuit court, in granting summary judgment in favor of Lillie, expressly found that Frances's Deed of Trust did not designate a remainderman to take the corpus upon the death of the life income tenants. The effect of that judgment, if allowed to stand, would be to disallow Beck's claim.

The next obvious question, then, is whether a court may invalidate a claim such as Beck has made, when the person making the claim has not been made a party to the proceedings nor given the opportunity to intervene. Neither Lillie nor Harvin named Beck in their complaints, and no party suggested the absence of a necessary party prior to the entry of judgment. Harvin did, however, raise a red flag when he argued at the hearing of the motions for summary judgment that a reasonable interpretation of Frances's Deed of Trust would include Beck as the designated remainderman. And, after judgment was entered, and a timely motion to alter or amend was filed, Harvin specifically argued that Beck was a necessary party and that the judgment affecting Beck's rights should be set aside to allow Beck an opportunity to be heard. Beck made the same argument in his motion to intervene.

Maryland Rule 2–211(a) requires, in pertinent part, that:

Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence

(1) complete relief cannot be accorded among those already parties, or

(2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties subject to a substantial risk of incurring multiple

or inconsistent obligations by reason of the person's claimed interest.

Section 3–405(a) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1989 Repl.Vol.), requires that:

(1) If declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party.

(2) Except in a class action, the declaration may not prejudice the rights of any person not a party to the proceeding.

We have said that "[g]enerally there is no difference in the rule as to necessary parties between a declaratory judgment proceeding and any other proceeding in personam." *Gardner v. Board of County Commissioners of St. Mary's County, Maryland,* 320 Md. 63, 76, 576 A.2d 208, 214 (1990) quoting from *Md. Naturopathic Ass'n v. Kloman,* 191 Md. 626, 631, 62 A.2d 538, 540 (1948).

The primary purposes of the requirement that necessary parties be joined are "to assure that a person's rights are not adjudicated unless that person has had his 'day in court' " and, to prevent "multiplicity of litigation by assuring a determination of the entire controversy in a single proceeding." *Bender v. Sec., Dep't of Personnel,* 290 Md. 345, 351, 430 A.2d 66 (1981); *see Bodnar v. Brinsfield,* 60 Md.App. 524, 532, 483 A.2d 1290 (1984).

Federal law on the question of required joinder of parties is instructive because Maryland Rule 2–211(a) is patterned after Fed.R.Civ.P. 19. With respect to actions involving claims to the disposition of a trust, it is said at 3A *Moore's Federal Practice* § 19.08 that:

Where the purpose of the suit is the disposition of a fund, a trust, or an estate to which there are several claimants, all of the claimants are generally indispensable, unless it will be possible to shape the relief so that their rights will not be prejudiced. (Footnote omitted.)

■ It would have been preferable to have the question of the required joinder of Beck squarely presented to the

trial court at an earlier stage of the proceeding. The failure to do so, however, is not fatal. Failure to join a necessary party constitutes a defect in the proceedings that cannot be waived by the parties, and may be raised at any time, including for the first time on appeal. *See, e.g., Kaliopulus v. Lumm,* 155 Md. 30, 37–38, 141 A. 440 (1928); *Bodnar v. Brinsfield, supra,* 60 Md.App. at 531–32, 483 A.2d 1290; Maryland Rules 2–322(b)(3) and 2–324(a).

We hold that Beck was a necessary party to the determination of whether Frances's Deed of Trust created a remainder interest in Beck and, as will more fully appear *infra,* if Beck is determined to have such an interest, he will also be affected by the determination that must be made concerning the nature of the life interest that we find continues to exist in favor of Harvin.[2] According to the pleadings, Beck is now a resident of Maryland, and therefore subject to service of process. Moreover, he has asked to intervene, so that on remand he may be joined by the simple expedient of granting his motion. We shall direct that the judgment of the circuit court be vacated so that Beck may be made a party and the issues unresolved by this opinion may thereafter be determined.

The trial court and the Court of Special Appeals addressed other issues that do not impact upon Beck, even if he is determined to have a remainder interest. Those issues have been fully briefed and argued before us, and in the interest of judicial economy, we now consider them. The trial judge held, and the Court of Special Appeals agreed, that if clause (2) of § 4–407 came into play (as it would if the Deed of Trust is construed not to dispose of the remainder), then that section would operate to immediately vest the corpus of the trust in Archie, thereby extinguishing

---

2. Another issue involved in the interpretation of Frances's Deed of Trust, which must be addressed on remand, is whether Harvin is entitled to receive all the income upon the death of Archie, or only the 50 percent share he received previously. The determination of this question will obviously affect the value of the remainder.

Harvin's interest as a life income beneficiary. We disagree. We hold that if § 4–407 is found to be applicable because no remainderman was designated by the trust instrument, then that section will operate only with respect to the remainder interest, and will not affect the valid life interest that remains.

This Court, in *Leidy Chemicals v. First Nat'l Bk.*, 276 Md. 689, 351 A.2d 129 (1976), traced the history of the exercise of powers of appointment by residuary clauses in this State and the genesis and purpose of § 4–407. The purpose of the second clause of § 4–407 is to accomplish the exercise of testamentary powers of appointment in a way that is generally fair when the power is not expressly exercised in the will and when the result of non-exercise of the power would otherwise be a reversion to the creator of the power. At the same time, the purpose was to avoid the inadvertent exercise of the power when the testator may have intentionally declined to exercise it so that the subject matter of the power would pass in accordance with the terms of the instrument that created it.

If it is ultimately determined that Frances's trust did not "provide for disposition of the subject matter of the power," then the power will be exercised by the residuary clause of Frances's will, because Frances did not expressly indicate in her will an intent to exercise the power. Lillie convinced the courts below that the "subject matter of the power" in this case was the corpus of the trust. Thus, her argument proceeded, because the court found that Frances's trust did not make provision for the ultimate disposition of the corpus of the trust, § 4–407 serves to exercise that power. And, concluded Lillie, because the residuary clause operated to transfer the corpus, and there cannot be a trust without a corpus, the trust terminated, and so, therefore, did Harvin's life interest in the income.

The fallacy in this reasoning proceeds from a failure to recognize the income and the remainder as potentially separate subject matters of a power of appointment. The power of appointment that Frances reserved in her Deed of Trust

related to both. In paragraph four, she stated: "[t]he Grantor specifically reserves the right to appoint by her Last Will and Testament both the principal and income of the trust estate hereby created...." It is clear that Frances could have exercised her power as to one and not the other, or appointed the income to one person and the remainder to another. In short, in this case the life estates in the income and the remainder formed separate subject matters of the power of appointment. Frances did not expressly exercise the power of appointment as to either. Accordingly, clause (2) of § 4–407 will cause the power to be exercised in accordance with a residuary clause, but only where the Deed of Trust "fails to provide for disposition of the subject matter of the power."

Here, as we have pointed out, the subject matter is in two parts—the interest in the income, and the remainder. As to the first, the Deed of Trust specifically provides what is to happen to the income following Frances's death. The income is to be paid one-half to Archie and one-half to Harvin, for the life of each. Thus, the failure of Frances to exercise a power of appointment as to the income does not trigger § 4–407.

As to the remainder, i.e., the principal, the situation may be different. Unless Beck is correct in his assertion that the Deed of Trust must be construed to give the remainder to him, there is no other disposition of the remainder made by the trust instrument. Under these circumstances, § 4–407 would operate to appoint the remainder to Archie's estate by virtue of Frances's residuary clause.

Harvin's life income interest therefore remains intact irrespective of whether Beck prevails. If Beck is correct, § 4–407 does not operate because Frances's Deed of Trust would then be construed to make a disposition of both the income and the remainder. If Beck is incorrect, § 4–407 operates only with respect to the remainder, and the income provisions established by Frances would survive.

All that is left for decision in Harvin's case is whether he is entitled to receive all of the income now that the other life income beneficiary has died, or whether he is entitled only to half the income. That issue involves a determination of Frances's intent, and will be appropriate for consideration by the trial court upon remand.

Lillie has one arrow left in her quiver, however, by which she seeks to fell Harvin's claim. She points to the 1980 agreement by which Harvin, Archie and the bank agreed to substitute a "new" trust for Frances's trust. The "new" trust authorized Archie to appoint by will the principal of that trust, which he did in favor of his estate. Thus, argues Lillie, Harvin has agreed to a substituted trust that by its terms and by the subsequent exercise of a testamentary power of appointment by Archie, has resulted in the termination of the trust and of Harvin's interest.

This Court has held that under some circumstances, where all parties in interest are in being and all are *sui juris*, they may agree to terminate a trust, and if no reason appears for denying their request, a court will terminate the trust. *Kirkland v. Mercantile–Safe Trust Co.*, 218 Md. 17, 24, 145 A.2d 230 (1958); *Manders v. Mercantile Trust Co.*, 147 Md. 448, 128 A. 145 (1925); *In Re Ricards' Trust Estate*, 97 Md. 608, 614, 55 A. 384 (1903). We need not consider whether a trust may be terminated solely by agreement of the parties and without court approval. Nor need we consider whether the absence of Beck as a party was fatal to the 1980 agreement. Rather, we hold that paragraph six of Frances's Deed of Trust created a spendthrift trust, and that a spendthrift trust cannot be terminated by the consent of the beneficiaries, even though all are *sui juris* and all join in seeking the termination. *Kirkland v. Mercantile–Safe Trust Co., supra*, 218 Md. at 24, 145 A.2d 230. Lillie's argument that Harvin should be estopped from asserting the invalidity of the 1980 agreement because he was a party to it is also without merit. Acceptance of that argument would have the effect of giving efficacy to the agreement, and that will not be done because to do so

would frustrate the intent of the creator of the trust by avoiding the spendthrift provisions. *See Lundgren v. Hoglund,* 219 Mont. 295, 711 P.2d 809, 814 (1985); *Ebbets v. International Factors,* 43 N.Y.S.2d 522, 523–24 (Misc.1943); *In Re Heyl's Estate,* 156 Pa.Super. 277, 40 A.2d 149, 151–52 (1944). We therefore hold that Harvin's right to receive income from the trust established by Frances is not adversely affected by Harvin's execution of the 1980 agreement.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY, AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THE VIEWS EXPRESSED IN THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.