**In re Estate of Creamer**

C.P. of Philadelphia County, No. O.C. No. 911 DE of 2012

HERRON, *J.*, Sept. 30, 2014—The account filed by the executrix to the estate of Roy A. Creamer, Sr., deceased, raises the issue of whether a beneficiary's share of his father's estate should be subject to a Family Court judgment in the amount of $16,289.37 for the support of his children where the deceased father's will contained a spendthrift provision. While ordinarily a spendthrift provision would shield a beneficiary's share from the claims of creditors while in possession of the fiduciary, an exception has been recognized in analogous case law

and statute for a beneficiary's child who has a judgment for support. In light of this exception, the executor must first honor the judgment in favor of Roy Creamer, Jrs.'s children before making distribution to him. The account cannot be confirmed until it is clear that there are sums sufficient to satisfy the judgment in favor of these children. If this judgment cannot be fully satisfied from Roy Jr.'s share of the estate, guardians must be appointed for the children to press their claim against the executor and the estate.

## Background

Roy A. Creamer. Sr. died on April 16, 2012. He was survived by his spouse, Joan Creamer, as well as by seven children. In his will dated February 25, 2011, Roy A. Creamer, Sr. named his son Roy. A Creamer, Jr. and his daughter, Dawn Creamer as co-executors. He specifically devised his real property located at 403 Sacramento Street in Ventor, New Jersey, to his son Roy Creamer, Jr. He gave the residue of his estate to be divided equally among his seven children. In paragraph FIFTH, his Will set forth the following spendthrift provision:

FIFTH: All principal and income shall, until actual distribution to the beneficiary, be free of debts, contracts, alienations and anticipations of any beneficiary, and the same shall not be liable to any levy, attachments, executions or sequestration while in the hands of my co-executors.

The decedent's wife, Joan Creamer, was completely left out of his will. On June 25, 2012, she filed a spousal election against the will pursuant to 20 Pa.C.S.A. §2203(a). Both co-executors filed a stipulation recognizing Joan

Creamer's entitlement to this election. On August 15, 2013, Roy A. Creamer, Jr. resigned as co-executor. According to the accountant's petition for adjudication, Roy Creamer, Jr. had hindered the smooth administration of his father's estate:

4. Roy, Jr., a beneficiary and originally a co-executor, has been diagnosed with bipolar disorder since his 30's, has a lifetime of substance abuse issues with many rehabs, has experienced bizarre delusions and has recently sustained a Traumatic Brain Injury as the result of an automobile accident on October 15, 2012 while under the influence of alcohol which resulted in his hospitalization for approximately 2 months.

5. Roy Jr. had other accidents on or about March 16, 2013 and March 31, 2013. Ms. Creamer tried to administer the estate with her brother, but found his conditions made it impossible to get many things that required his active participation and signature accomplished. For example Roy Jr. was in a coma, then rehab for weeks, twice in Friends Mental Hospital and then in rehab again for 20 days, all in the first year of administration of the estate.

6. Much of the time he was not in the hospital or rehab, he was drunk and/or high, contributing to the many other difficulties that Ms. Creamer was trying to deal with in the estate.

7. After trying unsuccessfully to administer the estate with her brother, Ms. Creamer, on many occasions, requested Roy Jr. to resign as co-executor to which request he finally agreed....

Petition for adjudication, ¶¶ 4-7.

The petition also stated that Roy, Jr. "is under a support order for children he had with Patricia Smith, the mother of his children, and has agreed in writing with Family Court to pay the money owed, which agreement was incorporated into an order of Judge Josephs on August 2, 2013.[1] The August 2, 2013 court order by Judge Joseph, attached as ex. 3 to the petition for adjudication, provides that petitioner's petition to reduce arrears to a judgment was granted and judgment was entered in the amount of $16,289.37 against Roy, Jr.[2]

In October 2013, Patricia Smith, whose sole relation to the estate was as the mother of the children of one of the heirs, Roy Creamer, Jr., filed a petition for a citation to show cause why the co-executors should not file an account. Although co-executrix Dawn Creamer retained an attorney to respond to this petition, no answer was filed and on November 25, 2013 Dawn Creamer was ordered to file an account within 20 days. This deadline was extended at the request of her attorney. By decree dated December 17, 2013, the executrix was given an additional two weeks to file her account by December 31, 2013. The account was filed on January 10, 2014. Nonetheless, on January 29, 2014, Patricia Smith filed a petition to hold Dawn Creamer in contempt for failure to file an account, which was dismissed by decree dated February 3, 2014

Two sets of objections were filed to the account. Harold Cohen, as the attorney originally hired by the executrix to respond to Patricia Smith's citation,[3] filed objections to

---

1. Petition for adjudication, ¶12.

2. In her 10/8/13 petition seeking an accounting, Ms. Smith states that this judgment was entered on behalf of Roy Creamer Jr.'s children against their father for support. ¶4 & Ex. B

3. Mr. Cohen testified that he had been retained on November 17, 2013 to file a response to the citation. 5/7/14 N.T. at 24 & 31.

the account based on the executrix's refusal to pay $5,018 owed by the estate to him for legal fees. Mr. Cohen had formally withdrawn his appearance as counsel for the estate on January 31, 2014. The second set of objections was filed by Patricia Smith on April 8, 2014. In those objections, she challenged Joan Creamer's spousal election against the will; she asserted the accountant had made distributions that had not been set forth in the account; she asserted that the executrix should be removed for "administering the estate to benefit her brother, Roy Jr. over the rights of Roy, Jr's. children."[4] The account was placed on the deferred audit list and a hearing was scheduled on the objections that had been filed to it.

After the executrix obtained new counsel, she and her mother, Joan Creamer, raised preliminary objections to Patricia Smith's claims. The main thrust of those objections is that Patricia Smith had no standing to raise any objections to the administration of the estate. More specifically, the executrix asserts that Patricia Smith falsely claimed to be a creditor of the estate, merely because she was the parent of the children of Roy A. Creamer, Jr., a beneficiary under his father's will. At best, she is creditor of Roy A. Creamer, Jr. and not his father's estate. The executrix further argues that because the will of Roy Creamer, Sr. contained a spendthrift provision, Patricia Smith, even if a creditor, lacks standing to proceed against the estate.[5] Joan Creamer raised similar arguments in her preliminary objections, asserting more specifically that Patricia Smith lacked standing to object to her spousal election against the estate.[6] This issue of standing had been raised by the

4. 4/8/14 Patricia Smith objections, ¶¶1-6.
5. 4/21/14 Dawn Creamer preliminary objections, ¶¶13-19.
6. 4/14/14 Joan Creamer preliminary objections, ¶¶17-21,

accountant as a question for adjudication in the Petition that was filed with the account. More specifically, the accountant raised the following question for adjudication:

Is Raymond J. Quaglia, Esquire, and/or Patricia Smith, who is represented by Mr. Quaglia, entitled to participate as a party or otherwise question any estate proceedings in that Ms. Smith has no claim against the estate but is at best a creditor of a beneficiary of the estate.

1/10/14 account, petition for adjudication, ¶14.

Hence, this issue of standing is properly before this court.[7] In resolving the objections to the account filed by Patricia Smith and Harold Cohen, several issues must be addressed in the following order: the standing of Patricia Smith to object to the administration of the estate and removal of its remaining executrix; the viability of the judgment for the support of Roy, Jr.'s children in the face of the spendthrift provision in his father's will; the validity of Harold Cohen's attorney fee request.

## Legal Analysis

### I. Patricia Smith Lacks Standing to Object to the Administration of the Roy Creamer, Sr. Estate or to Seek Removal of the Executrix Named in his Will

memorandum at 1-3.

7. On April 30, 2014, Patricia Smith filed preliminary objections to the preliminary objections of the accountant, asserting inter alia that the issue of standing cannot be raised by preliminary objection. But it is unnecessary to become mired in this procedural quagmire for the simple reason that the issue of Patricia Smith's standing was raised in the first instance in the petition for adjudication that was filed with the account on January 10, 2014. This allows this court to cut to the heart of the issues presented.

Patricia Smith's sole claim to a relationship with the estate of Roy Creamer, Sr. is as the mother of the children of Roy, Jr., who is a named beneficiary of the estate as well as one of the seven children who were designated as beneficiaries of the residuary estate. In seeking the removal of Dawn Creamer as executrix, Ms. Smith is implicitly relying on 20 Pa.C.S.A. §3183 which provides that "any party in interest" may seek removal of a personal representative. In order to qualify as a party in interest, Ms. Smith must satisfy the basic requirements for standing. As a general rule, under Pennsylvania case law "[s]tanding requires that an aggrieved party have an interest which is substantial, direct and immediate." *In re McGillick Foundation*, 537 Pa. 194, 199,642 A.2d 467,469 (1994). A party in interest to an estate is usually an unpaid creditor of the estate, beneficiary, heir or next of kin. *DiDio Estate*, 12 Fid. Rep. 2d 14, 15 (Bucks Cty. 1991)(decedent's son not named as beneficiary in her will lacked standing to seek removal of executor). In the instant case, Ms. Smith is neither a named beneficiary under the will nor a potential heir. She was not married to one of the beneficiaries. Although she is named in a judgment against a beneficiary, she stated in a pleading that the judgment was on behalf of the children of Roy Creamer, Jr. She thus lacks standing to seek the removal of Dawn Creamer as executrix, to object to the administration of the estate or to seek an accounting from the executor. *See, e.g. Hewitt Estate*, 44 Pa.D. & C.2d 109 (Phila. O.C. 1968)(Klein, J.)(where son had no interest in an estate, he could not demand an account or challenge the estate's administration).

II. The Judgment Entered on Behalf of the Children of Roy, Jr. Must Be Honored as to His Share of his Father's Estate Despite the Spendthrift Provision in Roy, Sr.'s Will

Although Patricia Smith lacked standing to make any personal claims against the Roy Sr.'s estate, the accountant admits in her petition for adjudication attached to the account that Roy, Jr. "is under a support order for children he had with Patricia Smith."[8] In fact, she attached a copy of this support order in the amount of $16,289.37 as exhibit 3 to the account, but then suggests that this order would not be enforceable because of Patricia Smith's lack of standing and the spendthrift provisions in the Roy Sr.'s Will. These, however, are two distinct issues. By admitting the existence of this support order, the accountant has presented the issue of its viability in light of the spendthrift provisions before this court for adjudication.

The Will of Roy Creamer, Sr. contains the following spendthrift provision:

> FIFTH: All principal and income shall, until actual distribution to the beneficiary, be free of debts, contracts, alienation and anticipations of any beneficiary, and the same shall not be liable to any levy, attachments, executions or sequestrations while in the hands of my co-executors.

Spendthrift provisions or trusts have a long and favored history under Pennsylvania law. *Heyl's Estate*, 50 Pa.D. & C. 357, 359 (Phila. O.C. 1944), *app. denied*, 156 Pa. Super. 277, 40 A.2d 149 (Pa. Super. 1944)("Spendthrift trusts have long been the favorite of the law"). In enforcing spendthrift clauses, "courts of this Commonwealth will uphold the spendthrift provisions as a means to enforce the settlor's right to dispose of his property as he so chooses." *Ware Trust*, 2002 Pa. Super. 407, 814 A.2d

---

8. 1/10/14 account, petition for adjudication, addendum ¶12.

725,731 (Pa. Super. 2002). Typically, these provisions are characterized as spendthrift trusts which arise when "a testator clearly expresses an intent to subject the income of a testamentary trust to a spendthrift provision, [so that] the income is exempt from execution in the hands of the trustee because the income of a spendthrift trust 'remains the testator's property until it is actually paid to the beneficiary." *Widener and Bigelow Trusts*, 16 Fid. Rep.2d 159, 162 (Monty. Cty. 1996)(Ott, J.). But once the distribution is made to the beneficiary, it may then be subjected to the claims of creditors. *Id.* at 163. *See also In re Goe's Estate*, 146 Pa. 431, 433-34, 23 A. 383 (Pa. 1892)(testatrix had the right to protect her estate against creditors of her children while in transit but after "it reaches the hands of the children it becomes their property absolutely" [and liable] "to execution and attachment"). In the case of spendthrift provisions in a will that does not create a trust such as Roy Sr.'s will, the testator who inserts spendthrift provisions in his will in essence creates an express trust that protects those assets while in the control of the fiduciary. *Clanton Estate*, 46 Pa.D. & C.3d 662, 664 (Chester Cty. 1987)(Even though the Will does not expressly mention the word "trust," it gives rise to a spendthrift trust which exists while the estate remains in the hands of the executor").

While a spendthrift provision or trust may protect a beneficiary's assets while in possession of the fiduciary in transit to beneficiaries, Pennsylvania courts have recognized exceptions to this protection. Claims for unpaid taxes, for instance, have been permitted to reach the interests of a beneficiary under a spendthrift trust. *Scott Estate*, 7 Fid. Rep. 218, 221-22 (Mont. Cty. 1957)(collecting cases from other jurisdictions). Claims for the support of spouses or

children against the beneficiary of a spendthrift trust have received differing treatments. Claims based on separation agreements for the support of a wife and child have not pierced the protection of spendthrift provisions in *Clanton Estate*, 46 Pa. D & C 3d 662 (1987) and *Clark v. Clark*, 411 Pa. 251, 191 A.2d 417 (Pa. 1963). In contrast, claims based on judgments for support have been recognized. As the Pennsylvania Supreme Court observed: "Originally it was the law of Pennsylvania that claims of a wife and/or child for support were no different from claims of other creditors, and therefore the interest of the beneficiary of a spendthrift trust could not be attached even on a claim of nonsupport. This result was subsequently changed by statute and case law." *Posner v. Sheridan*, 451 Pa. 51, 60, 299 A.2d 309, 313 (Pa. 1973). Pennsylvania courts have concluded, for instance, that judgments obtained by spouses for support can trump spendthrift provisions. *See In re Stewart's Estate*, 334 Pa. 356, 365, 5 A.2d 910, 914 (Pa. 1939)(a wife is "entitled to recover on a decree for maintenance and support entered by a court of competent jurisdiction" against "her husband's interest in the trust even though it contains a spendthrift clause"); *In re Morehead's Estate*, 289 Pa. 542, 137 A.802 (Pa. 1927) (court order requiring husband to make support payments to wife were enforceable against his spendthrift trust).

The enactment of the Pennsylvania Uniform Trust Act in 2006 clarifies who may override a spendthrift provision:

(b) Who may override. — *A spendthrift provision is unenforceable against:*

*(1) a beneficiary's child who has a judgment or court order against the beneficiary for support or maintenance to the extent of the beneficiary's interests in the income*

*and principal of the trust;*

(2) any other person who has a judgment or court order against the beneficiary for support or maintenance, to the extent of the beneficiary's interest in the trust's income

20 Pa.C.S.A. §7743 (emphasis added).

In the present case, the accountant has acknowledged that Roy Jr. is subject to "to a support order for the children he had with Patricia Smith." Petition for adjudication, addendum at ¶12. According to the court order the accountant herself attached to the account, Roy, Jr. is subject to a judgment of $16,289.87. In light of the provisions of the PEF code, which by analogy would apply to the Will in this case, Roy Jr.'s interest in the estate of his father shall be subject to that judgment for the support of his children. That judgment, however, would extend only to his interest in the estate and would be paid by the accountant directly to the judgment creditor.

According to the statement of proposed distribution, Roy Jr. is entitled to one-seventh of the remaining principal after Joan Creamer's claim for an elective share of the estate. In addition, he is to receive the balance from the sale of the New Jersey property that was specifically bequeathed to him — after payment of expenses and the elective share of Joan Creamer. This raises the issue of the standing of Roy, Jr.'s children: they would have standing in this matter to the extent of their $16,289.87 judgment. If that judgment is paid in full, this matter is resolved. If, however, the executrix cannot pay that total sum, the children would have standing to challenge Joan Creamer's claim to an elective share. At that point, guardians would

have to be appointed to protect those interests. In light of this open issue, the account cannot be confirmed as presently stated and will be returned unaudited.

III. The Request of Harold Cohen for Additional Attorney Fees in the Initial Amount of $5,018 and the Supplemental Amount of $778.45 is Unreasonable and will be Reduced to $3,000 in addition to the $1,000 Retainer Fee

Harold Cohen, the former attorney for the estate of Roy Creamer, Sr., filed objections to the account asserting that the executrix failed to pay him the sum of $5,018 for the legal services he performed for the estate. In support of this claim, he attached an invoice covering the period December 1, 2013 through January 10, 2014. He also testified at the hearing on his objections, where he presented a supplemental invoice for an additional $778.45 for the period after he ceased representing the Creamer estate.

Attorneys who perform services for an estate are entitled to reasonable compensation based on their actual services to the estate. *Estate of Sonovick*, 373 Pa. Super. 396, 399-400, 541 A.2d 374, 376 (1988). An attorney bears the burden of showing facts that establish that he is entitled to the requested compensation. *Estate of Preston*, 385 Pa. Super. 48, 56, 560 A.2d 160, 164 (1989). The following standard applied in Pennsylvania for determining the reasonableness of claims for attorney fees was established by the Pennsylvania Supreme Court in *LaRocca Estate*, 431 Pa. 542, 246 A.2d 337 (1968):

What is a fair and reasonable fee is sometimes a delicate, and at times a difficult question. The facts and

factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and very importantly, the amount of money or the value of the property in question.

*LaRocca Estate*, 431 PA. at 546, 246 A.2d at 339.

At the hearing on his objections, Mr. Cohen acknowledged that he had been paid a $1,000 retainer fee for his legal services.[9] He referenced his invoice for $5,018.00 (Ex. C-2) and expressed his belief that it was fair and reasonable. Mr. Cohen also presented a "supplemental" invoice as exhibit C-3 for $778.45 covering the period March 7, 2014 through May 7, 2014 when he was no longer employed by the estate. On cross examination, he conceded that Ms. Creamer had initially retained him to file an answer to the petition seeking an accounting by Patricia Smith and that he had failed to do so because she had contacted him only days before the answer was due.[10] The executrix was subsequently ordered to file an account by December 16, 2013. By decree dated December 17, 2013, the executrix was given an additional two weeks to file the account on December 31, 2013. The

---

9. 5/7/14 N.T. at 33 (Cohen).
10. 5/7/14 N.T. at 31 (Cohen).

account was not filed, however, until January 10, 2014. A contempt petition was thereafter filed against the executrix on January 29, 2014, but by that time Mr. Cohen no longer represented the estate.[11]

Ms. Creamer testified that after Mr. Cohen failed to respond to the petition seeking an accounting, she was leery about using him to file the account but she lacked time to find a new attorney. She hired an accounting firm to prepare the account and paid them $3,500. In her opinion, the accountants did an excellent and timely job.[12] In contrast, she complained that Mr. Cohen did not contact her until the day before the extended deadline of December 31 for documents that had to be filed with the account. He had never sent her a concise breakdown of the documents that he needed. And the forms that he filled out for the accounting needed constant revision and correction by her.[13] This testimony is borne out by Mr. Cohen's bill which shows that he spent minimal time of the Roy Creamer, Sr. estate until December 30, 2013 when he spent 5.2 hours reviewing documents, drafting and assembling the petition and addendum. On the day the account was due to be filed, he spent 4.2 hours on continuing to assemble and revise the petition. Finally, the invoice reflects that the account was not filed until January 10, 2014. Ex. C-2. Although Mr. Cohen had complained that he had been required to respond to as many as 250 emails from the executrix, the invoice reflects only modest time spent on emails and telephone calls on December 1-6 (.8 hours), December 7 (.3 hours), on December 12 (1.4 hours including time spent on drafting a letter to this court), December 26 (.3

11. 5/7/14 N.T. at 36-37 (Cohen).
12. 5/7/14 N.T. at 43-44 (Creamer).
13. 5/7/14 N.T. at 42-46 (Creamer).

hours) and December 28 (.5 hours).

Ms. Creamer stated that she had never seen the supplemental bill for $778.45 until the day of the hearing. That supplemental bill lists services performed on March 7, March 10, April 7, May 6 and May 7. Ex. C-3. This bill is totally without merit because as Mr. Cohen admitted he had ceased working for the estate in January 2014. No facts were presented by the attorney to justify this charge.

As for the invoice for $5,018, the "time expended does not replace the test of reasonableness, and while time involved is a factor in setting a fair and reasonable fee, it is only one of several factors set forth in *LaRocca Estate*." *Estate of Burch*, 402 Pa. Super. 314, 319, 586 A.2d 986 (1991). The lion's share of the initial invoice was spent on preparing the documents and petition for the account on December 30 and 31. This last minute effort did not meet the December 31 deadline for filing the account that Ms. Creamer rightfully believed was very important. Moreover, the account was not filed until ten days after the deadline. Ms. Creamer was thereafter confronted with a petition for a contempt citation, which she was forced to respond to after retaining new counsel. Under *LaRocca* "the character of services rendered" and the results an attorney "was able to obtain" must be considered. In this case, the time spent on preparing the account did not result in a timely filing. In addition, although he had been retained initially to file an answer to the petition for an accounting, Mr. Cohen failed to do so. For these reasons, the request for $5,018 in attorney fees is unreasonable and shall be reduced to $3,000.

According to the accountant, Pennsylvania Transfer Inheritance and estate tax in the amount of $3,476.58 was

paid on August 21, 2013 with $56.73 "due currently." The accountant shall of course pay all taxes that are due. The account states that the balance of principal before distribution is $107,205.41 and the balance of income before distribution is $10,550 for a total of $117,755.41.

In light of the open issue as to whether the accountant will be able to pay the $16,289.37 judgment in favor of the children of Roy, Jr. from his share of the estate, the account cannot be confirmed as stated.

Accordingly, this 30th day of September 2014, it is hereby ordered and decreed that the first and final account of Dawn Creamer, executrix, of the estate of Roy Creamer, deceased shall be returned to the Clerk of Orphans' Court unaudited.