LEIDY CHEMICALS FOUNDATION, INC. *v.* FIRST NATIONAL BANK OF MARYLAND, ETC. ET AL.

[No. 109, September Term, 1975.]

*Decided February 3, 1976.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ., and J. HODGE SMITH, Administrative Judge of the District Court of Maryland for District 6, specially assigned.

*W. Michel Pierson,* with whom were *Pierson & Pierson* on the brief, for appellant.

*Robert M. Thomas,* with whom were *Alexander I. Lewis, III, Venable, Baetjer & Howard, Melvin J. Sykes, Searle E. Mitnick, Kenneth P. Niman* and *Kaplan, Heyman, Engelman & Belgrad* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

This appeal from a decree of the Circuit Court of Baltimore City calls for an examination of our law regarding the exercise of powers of testamentary appointment.

In December, 1933, Samuel M. Leidy (Samuel) and his son, John Jacob Leidy (John), entered into a trust agreement with Samuel K. Dennis and the Fidelity Trust Company, as trustees. The trust was funded with certain policies of insurance on the lives of Samuel and John along with securities and cash. In 1935, First National Bank of Baltimore (now First National Bank of Maryland) (First National) was substituted as trustee for the trustees named in the agreement. When this litigation commenced, the trust assets had an approximate value of $104,000.00.

The dispositive provisions of the instrument, to the extent pertinent to the issue before us, were as follows: income was to be paid in equal shares to Samuel and John for the term of their respective lives; upon the death of Samuel, if survived by John (which occurred on 22 May 1942), $6,000.00 was to be paid from the principal of the trust to a named beneficiary, and the income from $30,000.00 of trust assets was to be paid for life to Alma L. Otley. The remaining net income of the trust was to be paid to John for life.

If John should survive Ida M. Leidy, his mother and the wife of Samuel (he did), the remainder of the trust estate, subject to the life interest of Alma L. Otley, was to be

". . . distributed by the Trustees, absolutely and free of trust, *to those persons and corporations which John Jacob Leidy, by his Last Will and Testament, may expressly appoint,* and, if the said John Jacob Leidy, by a Last Will and Testament, *does not so expressly appoint,* the Trustees shall distribute, absolutely and free of trust, the entire trust estate to the persons then living who would have had a right to receive the same as the heirs and distributees of John Jacob Leidy had he at that time died intestate possessed thereof, owning the same, owing no debts, and domiciled in Maryland under the Maryland law as it then exists." (emphasis supplied).

Sometime in 1966, John married Dorothy B. Greif. Prior to the marriage, he and Mrs. Greif had entered into an antenuptial agreement, in which they agreed:

"The first party [John], his heirs and assigns, shall hold free from any claim or right of dower, inchoate or otherwise, on the part of the second party [Mrs. Greif], all real and personal property, of which he may be now, or hereafter seized or possessed; and . . . [Mrs. Greif] will hereafter execute, or join as a party in any instrument which may be requested by . . . [John], his heirs or assigns, for the purpose of divesting any claim whether of dower, inchoate

or otherwise, or of distributive share or otherwise, in said property; . . . [Mrs. Greif] hereby waiving and relinquishing all claim to dower, homestead, widow's award or the right to renounce the will of . . . [John] or elect to take against the will of . . . [John], whether heretofore or hereafter made, or other right to the real and personal estate of which . . . [John] may die seized or possessed."

John survived his mother, Ida M. Leidy, and died domiciled in Baltimore City on 25 October 1970, survived by his wife, Dorothy B. Greif Leidy, but by no children or descendants. His next of kin, other than his wife, were an aunt and numerous first cousins: the children of the deceased brothers and sisters of his mother, Ida M. Leidy, and the sister and the children of three deceased sisters and of a deceased brother of his father, Samuel.

John's will, executed on 3 September 1970, after making provision for his mother (who predeceased him); for the satisfaction of any obligation owed his former wife, and for the payment of pecuniary legacies totalling $269,400.00 to a group of 34 relatives, friends and employees, left the residue of his estate to Leidy Chemicals Foundation, Inc.:

"I give, devise and bequeath all of the rest, residue and remainder of my property and estate, of every kind and description and wheresoever situate, which I may own or have the right to dispose of at the time of my death, specifically including whatever stock in Leidy Chemicals Corporation owned by me at the time of my death which remains after the redemption of a portion thereof . . . [for purposes of paying federal estate taxes and expenses of administration] unto Leidy Chemicals Foundation, Inc. a Maryland corporation. . . ."

First National, being uncertain whether the will contained a valid exercise of the power of testamentary appointment, conferred on John by the deed of trust, and if the power was not validly exercised, whether the trust corpus, in default of

the exercise of the power, passed to Dorothy B. Greif Leidy, or to John's next of kin other than his wife, instituted an equity proceeding which sought a judicial construction of the trust agreement and the will.

From a decree holding that the power of appointment was not exercised in accordance with the terms of the deed of trust and that the corpus of the trust estate now distributable and to be distributed on the death of Alma L. Otley passed to Dorothy B. Greif Leidy, Leidy Chemicals Foundation, Inc. appealed to the Court of Special Appeals.[1] We granted certiorari before the case was heard in that court.

We are satisfied that the chancellor (Howard, J.) was eminently correct when he concluded that the power of testamentary appointment conferred upon John by the trust agreement had not been validly exercised by his will.

Until the enactment of Chapter 249 of the Laws of 1888, the Maryland law regarding the exercise of powers of appointment was that stated for the Court by Judge McSherry in *Balls v. Dampman*, 69 Md. 390, 393, 16 A. 16, 17 (1888), quoting *Mory v. Michael*, 18 Md. 227, 241 (1862):

> " '[T]he rule of construction by which such an intention [to execute a power of appointment] may be ascertained is explicit and exhaustive, and may be thus concisely stated: The intention to execute a power of appointment by will, must appear by a reference in the will to the power, or the subject of it, or from the fact that the will would be inoperative without the aid of the power.' "

The Act of 1888 was obviously intended to ameliorate the

---

1. The next of kin of John Jacob Leidy (other than Dorothy B. Greif Leidy) also appealed from the decree, but these appeals were dismissed before argument. As a consequence, the question whether the existence of the antenuptial agreement precludes Mrs. Leidy's taking as next of kin is not before us. It should be noted that Item 42 of John Leidy's will provided:

"I expressly exclude my wife, Dorothy B. Leidy, from taking any share or portion of my estate and property and I do this in reliance upon and pursuant to an ante-nuptial agreement between my said wife and me dated February 7, 1966."

strict rule of the case law. It added a new § 316 to Maryland Code (1888) Article 93:

> "Every devise and bequest purporting to be of all real and personal property belonging to the testator shall be construed to include also all property over which he has a general power of appointment, unless the contrary intention shall appear in the will or codicil containing such devise or bequest."

The same provision appeared in Code (1924) Art. 93, § 339, in effect at the time the trust agreement was drafted, and survived as § 356 of the Code of 1951 until the enactment of Code (1957, 1969 Repl. Vol.) Art. 93, a complete revision of our law relating to decedents' estates, when § 4-407, which was applicable to wills executed after 1 January 1970, provided:

> "*Subject to the terms of the instrument creating the power*, a residuary clause in a will exercises a power of appointment held by the testator if, and only if,
>
> (i) an intent to exercise the power is expressly indicated in the will or
>
> (ii) the instrument creating such power of appointment fails to provide for disposition of the subject matter of the power upon its non-exercise." (emphasis supplied).[2]

The purpose of § 4-407 was apparently to prevent an inadvertent exercise of the power, which had been possible under the prior law. It is true that the Comment to Code (1957, 1969 Repl. Vol.) Art. 93, § 4-407 contains the following statement:

> "To satisfy the phrase 'expressly indicated' in clause (i) of Section 4-407 it is not intended that the

---

**2.** This now appears in Code (1974), as § 4-407 of the Estates and Trusts Article. The only change is the substitution of "only if" for "if, and only if" in the third line.

particular source of the power, i.e., 'under my father's will' must be identified. It is intended that such language as 'All of the rest of my estate and property, including all property over which I may have any power of appointment, I give, devise and bequeath to' etc., will fully exercise any power, whether general or special, held by the testator *whose terms of exercise are consistent with the language used in such testamentary disposition.*" (emphasis supplied).

However, we think that the Comment is not controlling here. It is here that the crux of the case lies, since the trust agreement required that distribution of trust assets be made "to those persons and corporations which John Jacob Leidy, by his Last Will and Testament, may *expressly* appoint." The short of it is that, in our veiw, the terms of the instrument creating the power required an express exercise of the power, *i.e.*, either by a reference to the instrument creating the power or by a reference to the estate which was subject to the power.

Our cases have long held that when the method of the execution of the power is set out in the instrument creating it, that method of execution must be used, and another will not suffice, *Lednum v. Barnes*, 204 Md. 230, 243-44, 103 A. 2d 865, 871 (1954); *Hutchinson v. Farmer*, 190 Md. 411, 417, 58 A. 2d 638, 640 (1948). The same principle is stated somewhat differently in *O'Hara v. O'Hara*, 185 Md. 321, 323, 44 A. 2d 813, 815 (1945):

"It is a well-established principle that where there are several modes of executing a power, and the donor does not direct how the power shall be executed, the donee himself may select the mode; but where the mode is prescribed by the donor, the power cannot be executed in any other mode."

E. Miller, Construction of Wills in Maryland § 250, at 711-13 (1927) puts it this way:

"When the mode in which a power is to be executed is not defined by the instrument creating

the power, it may be executed by deed or will or simply in writing. But any methods, formalities or conditions prescribed by the instrument must be strictly complied with. The person who creates the power has the right to create what checks he pleases to impose, to guard against a tendency to abuse . . . . [T]he instrument creating the power may prescribe any ceremonies which the will or caprice of the party creating it may think proper. All such ceremonies must be complied with, however unessential or unimportant they may appear to be in themselves." (citing *Schley v. McCeney*, 36 Md. 266, 273 (1872)) (footnotes omitted).

*See also Lamkin v. Safe Deposit & Trust Co.*, 192 Md. 472, 479, 64 A. 2d 704, 707 (1949); Moser, *Some Aspects of Powers of Appointment in Maryland*, 12 Md. L. Rev. 13, 18 (1951); Note, *Exercise of a General Power of Appointment Without Specific Reference to the Power*, 2 Md. L. Rev. 155 (1938). This was the law both before and after the Act of 1888, and we see no reason to believe that it was changed in 1970 by Code Art. 93, § 4-407.

In requiring that the trust assets be expressly appointed, the draftsman used the language customarily used by careful draftsmen to minimize the possibility of an inadvertent exercise of the power, relying on the definition of the word, Webster's New International Dictionary of the English Language 899 (2d ed. 1944): "EXPRESSLY 1. In an express manner; in direct or unmistakable terms; explicitly; definitely; directly . . . . 2. For the express purpose; particularly."

Our research indicates that the precise issue now before us has never been considered in Maryland, and we could find few cases elsewhere directly on point. In *Shine v. Monahan*, 354 Mass. 680, 241 N.E.2d 854 (1968), a husband established an inter vivos marital trust, under the terms of which his wife was given a life interest in the trust income with a power of testamentary appointment "by specific reference in her will to the full power hereby created." The residuary

clause of the wife's will stated: ". . . including all property of which I have the power of appointment by virtue [of] any will or testament or inter vivos trust executed by my husband. . . ." The court, holding this to be a valid exercise of the power by the wife, noted that the purpose of the language of the trust was to prevent an "inadvertent exercise" of the power.

In *Bliss v. Johnson,* 223 A. 2d 306 (Me. 1966), another case involving an inter vivos marital trust, the wife had been granted a testamentary power of appointment which she could exercise by *"specifically* referring to this power." The wife's will made no reference to the power or the appointive property but did contain a residuary clause. The issue before the court was whether the appointive property was part of the wife's estate for state inheritance tax purposes. In determining that the property was part of the wife's estate, pursuant to a state statute, the court made no mention of the question whether her residuary clause was a valid exercise of the power even though the state tax assessor had contended that it was.

We further note that the Uniform Probate Code § 2-610 (1969) would adopt a rule requiring specific reference to the power of appointment or "some other indication of intention to include [in a residuary clause] the property subject to the power." The Comment to this section points out that most powers of appointment are created by marital deduction trusts for federal estate tax purposes, and the donor of the power is most interested in avoiding an inadvertent exercise of the power.

The general language used by the testator here was not explicit enough, and the court below was correct in so holding.

> *Decree affirmed, costs to be paid*
> *from corpus of the trust estate*
> *in the hands of the trustee.*