ESTATE OF Jean Ross McNEILL.

Supreme Judicial Court of Maine.

Argued June 7, 1983.

Decided Aug. 8, 1983.

Drummond, Woodsum, Plimpton & Mac-Mahon, P.A., S. James Levis, Jr. (orally), Portland, for plaintiff.

Verrill & Dana, William C. Knowles (orally), Beth Dobson, John Mitchell, Portland, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS and VIOLETTE, JJ.

GODFREY, Justice.

The Young Men's Christian Association of Sanford and Springvale and three other charitable or benevolent organizations ("charities")[1] appeal from an adverse judgment of the York County Probate Court. We affirm the judgment.

Danforth Ross and his wife, Edith Ross, created three inter vivos trusts designating his daughter, Jean Ross McNeill, as lifetime income beneficiary and giving her a testamentary power to appoint the principal of each trust. In 1967, Danforth died, leaving a will which was duly probated in the York County Probate Court. The will created numerous trusts, two of which, referred to in this litigation as "the C trust" and "the R trust," are relevant on this appeal.

Edith was given a testamentary power of appointment over the corpus of the R trust. The C trust provided that income was to be paid to Edith for her life and, after Edith's death, to Jean for her life. It then gave Jean a testamentary power of appointment over a portion of the corpus, with "the balance" to become part of the R trust. Edith died in 1968 and in her will exercised her power under the R trust by creating a new trust for the benefit of the four appellant charities.

In 1969, Jean McNeill, then a resident of Massachusetts, executed a will (the "1969 will"), which expressly provided that she exercised her powers of appointment over the three inter vivos trusts. The 1969 will did not provide for exercise of her power over the designated portion of the C trust.

In 1981, Jean McNeill, while domiciled in New Hampshire, executed a document purporting to be a new will (the "1981 will"). The 1981 will purported (1) to revoke her

prior will, (2) to exercise her powers of appointment over the inter vivos trusts by appointing them in a different manner than in the 1969 will, and (3) to exercise her power over the C trust. The provisions for exercise of her several powers of appointment consisted of setting up three new individual trusts for the benefit of her husband, Roderick, and two of her three sons. The third son, a trust beneficiary under the 1969 will, was not named as a beneficiary of the new trusts under the 1981 will.

New Hampshire law requires three witnesses to a will. Since the 1981 will was witnessed by only two persons, it was invalid. No attempt was made to probate it there.

Instead, the 1969 will was presented by Roderick McNeill to the probate court in Rockingham County, New Hampshire, as the last valid operative testamentary expression of Jean McNeill. The court determined that Jean was domiciled in New Hampshire and admitted the 1969 will as her last will and testament. The parties have stipulated that those determinations are final, although Roderick has been granted an extension of time to file a spousal election against the will. He was duly appointed executor under the 1969 will by the New Hampshire court.

On August 6, 1981, Roderick petitioned the York County Probate Court to allow the 1981 will. He asserted that trust assets over which the decedent, Jean McNeill, had a power of appointment were held by Northeast Bank in Sanford, Maine. The fourt appellant charities were not listed as interested parties and received no notice of the proceeding.

On September 9, 1981, the York County Probate Court admitted the 1981 will to probate "for the limited purpose of effecting the exercise of any and all powers of appointment therein made which were not otherwise made by the 1969 will." The appointments of the inter vivos trusts that

---

1. The other three charities are United Way of Sanford-Springvale, Inc., Henrietta D. Goodall Hospital, Inc., and North Parish Congregational Church.

were exercised by Jean McNeill in her 1969 will were unaffected by the order. The court also appointed Roderick as personal representative under the 1981 will.

On September 18, 1981, Roderick McNeill asked the court to reconsider and modify its order, on the ground that only the C trust was affected by the order. On September 29, 1981, the court issued a modified order purporting to enforce the exercise of the powers in the 1981 will over all four trusts.

The charities became aware of these proceedings and asked that the order and the modified order be vacated. On April 6, 1982, the York County Probate Court granted the motion and permitted the charities to file responses to Roderick's original petition for probate of the 1981 will. The charities objected to the admission of the 1981 will and petitioned the court to allow the 1969 will. After a hearing and submission of briefs, the court decided that: (1) the 1969 will would not be admitted to probate since the decision of the New Hampshire probate court was not final; (2) the 1981 will would not be admitted to probate as the last will and testament of Jean McNeill; and (3) the 1981 will was a valid exercise of the power of appointment granted to Jean McNeill by the provisions of the C trust of Danforth Ross.[2] The charities appeal from the judgment, entered on December 6, 1982, contending that the power was never exercised.

■ As a general rule, a power must be exercised in the manner prescribed by the donor. Restatement (Second) of Property § 18.2 (Tent.Draft No. 6, 1983); Restatement of Property § 346 (1940). Danforth Ross, the donor, required Jean to exercise her power of appointment over the C trust assets "either by her Last Will and Testament or other testamentary instrument." The parties debate at length whether the 1981 will complied with the formal requisites of appointment as specified by Danforth. It is not necessary to resolve that question.

■ For the sake of argument, we assume, favorably to the charities, that the 1981 will may not be admitted to probate in Maine and is not an "other testamentary instrument" within the meaning of Danforth's expressed intent. Even so, we think the 1981 will effectively appointed the C trust assets because of an equitable exception to the general rule that a power must be exercised in the manner prescribed by the donor. That exception is expressed in section 18.3 of the Restatement (Second) of Property (Tent.Draft No. 6, 1983), as follows:

Failure of an appointment to satisfy the .formal requisites of an appointment described in § 18.2, other than those required by law, does not cause the appointment to be ineffective in a court applying equitable principles if

(1) The appointment approximates the manner of appointment prescribed by the donor; and

(2) The appointee is a natural object of the donee's affection. . . .

*Accord* Restatement of Property § 347 (1940).

Both conditions specified in section 18.3 are satisfied here. First, the appointees of Jean McNeill's 1981 will, her husband and two of her sons, were natural objects of her affection. Second, appointment by an instrument in the form of a will that would be valid except for lacking the requisite number of witnesses "approximates" appointment by will. *Ward v. Stanard,* 82 A.D. 386, 81 N.Y.S. 906 (1903); 2 L. Simes & A. Smith, *The Law of Future Interests* § 980, at 459 (2d ed. 1956); *cf. American Freehold Land Mortgage Co. v. Walker,* 31 F. 103 (C.C.S.D.Ga.1887) (appointee a purchaser for value). The present case comes within the reason underlying the rule, which has been expressed as follows:

[W]here a donee has intended to exercise a power, but has failed to observe to the letter some formality which the donor has

2. The court made no decision with respect to the decedent's appointment of the three inter vivos trusts, in which the charities have no beneficial interest.

prescribed, a conclusion that the power effectively has been exercised must be grounded on an interpretation of the expressed intent of the *donor*. In a particular case it may be quite reasonable to conclude that, although the donor, in creating the power, prescribed a specific formality, his effective intent was merely to require sufficient formality to insure against a hasty act by the donee.... When a donor stipulates that a power of appointment is to be exercised by will, it may be assumed that he does so in order to extend, as far as possible, the period during which the appointment is discretionary in the donee, thus minimizing the danger of an ill-advised appointment.

5 *American Law of Property* § 23.44, at 578 (A. Casner ed. 1952); *see Shine v. Monahan*, 354 Mass. 680, 241 N.E.2d 854 (1968).[3] In the circumstances, it would not further Danforth's purpose to hold his daughter's attempted appointment of her husband and two sons ineffective for want of a third witness to the appointing instrument.

The entry is:

Judgment affirmed.

All concurring.

---

3. Although the Restatement formulation of the exceptions to the general rule does not refer to countervailing equitable considerations, we note that, in rare cases, such considerations may limit the applicability of the exceptions. *See* 2 *Sugden on Powers* *103, 111–112.