In the Matter of the ESTATE OF
Mala P. BURGESS, Deceased.

Peter D. BURGESS, Stephen M. Burgess, and P. Richards Burgess, Appellants,

v.

Gerald E. POULSEN, Richard A. Poulsen, and Gail W. Poulsen, Appellees.

No. 910242–CA.

Court of Appeals of Utah.

July 7, 1992.

Certiorari Denied Oct. 20, 1992.

Randall E. Grant, David R. Olsen, William L. Prater, and Paul M. Simmons, Salt Lake City, for appellants.

Gary N. Anderson, Larry E. Jones, and Bruce L. Jorgensen, Logan, for appellees.

Before BENCH, P.J., BILLINGS, Associate P.J., and RUSSON, J.

## OPINION

BENCH, Presiding Judge:

Appellants challenge the trial court's holding that Mala Burgess effectively executed a power of appointment of a marital trust granted to her by her predeceased husband in his will. We reverse.

## FACTS

Dr. J. Paul Burgess, a widower with three sons, married Mala Poulsen in 1957. She did not have children prior to the marriage and there were no offspring from this union. In 1965, Dr. Burgess executed a will which created a marital trust if Mrs. Burgess survived him (the Marital Trust). In the trust provisions of his will, Dr. Burgess granted to Mrs. Burgess a general power of appointment over the Marital

Trust which, if effectively exercised, would enable her to distribute the Marital Trust estate through her will. His will provided as follows:

> Upon the death of Mala P. Burgess, the remaining principal, including any uncollected and/or undistributed income shall be paid over, delivered, assigned, transferred or conveyed to and among such appointee or appointees, including her estate, and in any proportions and in any manner *as she shall direct by Will in expressly intending to exercise this power by making specific reference therein to said power....*

(Emphasis added.) [1]

Dr. Burgess's will further provided that:

> In default of the *complete exercise* of the above described general power of appointment, any property, including principal and income then remaining in this Marital Trust, upon the death of Mala P. Burgess not *effectively* appointed by her shall be disposed of as a part of the Residuary Estate as hereinafter set out.

(Emphasis added.)

Under Dr. Burgess's will, the residuary estate was to go to his three sons from his first marriage, appellants herein. Dr. Burgess died December 20, 1972.

After Dr. Burgess's death, Mrs. Burgess established two inter vivos trusts and named one of her brothers, Gerald E. Poulsen, as beneficiary. She also executed a will, making specific bequests to the appellants and to two of her nieces and leaving the rest of her estate to her brothers, appellees herein. It is undisputed that Mrs. Burgess did not exercise the Marital Trust's power of appointment in her will. This dispute arises from a cryptic holographic codicil executed by Mrs. Burgess on March 30, 1987. The codicil, as transcribed in its entirety, reads as follows:

[Page 1]

TRUST

After everything's taken care of what is left is to go as follows:

| | | |
|---|---|---|
| $10,000 | to Paul Richards Burgess | |
| $ 5,000 | to each of his daughter | Lisa |
| | | Kim |
| $20,000 | | |

| | |
|---|---|
| $10,000 | to Peter D. Burgess |
| $ 5,000 | each to his son and daughter, Melissa & Tim |
| $20,000 | |

Western Life

| | |
|---|---|
| $10,000 | Steve |
| $ 5,000 | to each son, Heb, Mathew & Jason |
| $25,000 | |

| | |
|---|---|
| $10,000 | to Bonnie DeHart |
| $10,000 | to Jody Allen |

The remainder is for 3 brothers, Gerald E. Poulsen, Gail W. Poulsen, Richard A. Poulsen

---

1. Powers of appointment such as this are commonly used in connection with marital trusts as a result of federal estate tax laws. *See generally First Nat'l Bank of McMinn County v. Walker,* 607 S.W.2d 469, 472 (Tenn.1980).

The piano is disposed of as Pete wishes.
The clock (grandfather) — — — — —
My car — — — — —
Jewelry, Sterling, Silver Plate — —
Dishes, Silver — — — — —

Ed Richards drew up the will in 1980 (Salt Lake City)—worked for *Trust—Not a lawyer*—I want to have a new will drawn but use this codicil if it isn't done.

    [superscribed across the foregoing paragraph was the word "Legal."]

/s/Mala P. Burgess

[Page 2]

Should Gerry (Gerald E. Poulsen) be incompacitated [sic] I would like the First Interstate Bank to assume his responsibilities—namely: distributing money I have acquired in the following companies:

App.   227 I.D.S. (short term)
257   Merrill Lynch (short term)

|  | Boettcher (Kemper now) | Any I |
| 20 | Cincinnati Gas & Electric | may |
|  | Boettcher | have |
|  | Summitt Systems | forgotten |

12–16,000 Lot in Star Valley, Wyoming
Pd.   Beneficial Life Insurance
    First Security Bank
    First Interstate
1   Univ of Utah Bond
    Social Security
    Residence $140,000—$150,000 1st Trust Deed

10,000 Shea Road in Scottsdale
12,000 Lot # 13 Circle R Industrial Park 1st Trust Deed

All are short term bonds—tax exempt (Not the Shea. Rd. nor # 13 Circle Ind. Park
I want ½ of whatever my *3* brothers (since Kent died without issue) receive from me to be divided equally among their children (2–Gail, 2–Richard, 6–Gerry) I want them to know it's from me! I will make up the difference to Gerry for the 4 extra children—

Tuesday—Mar. 30, 1987—/s/Mala P. Burgess

---

Mrs. Burgess died on September 10, 1987. In January 1990, the trustee of the Marital Trust filed a petition for interpretation of the will and codicil. The district court concluded that "[t]here is no formula" whereby Mrs. Burgess was to exercise her power of appointment. It then found that Mrs. Burgess's intent to exercise the general power of appointment was "fairly made." The Marital Trust assets were therefore ordered to be distributed under the terms of Mrs. Burgess's codicil.

Appellants contend that for Mrs. Burgess to have validly exercised the Marital Trust's power of appointment in her codicil, she needed to make "specific reference therein to said power." They argue that since there is absolutely no reference therein to the power, she failed to exercise the power. According to appellants, the Marital Trust assets should therefore be distributed as originally directed by Dr. Burgess in his will.

## ANALYSIS

### Standard of Review

The statutory rule in Utah is that "[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions. The rules of construction expressed in the succeeding sections of this part apply *unless a contrary intention is indicated by the will.*" Utah Code Ann. § 75-2-603 (1978) (emphasis added). Absent any ambiguity in Dr. Burgess's will, we interpret his will as a matter of law giving no deference to the interpretation of the trial court. *Cf. Estate of Schmidt v. Downs,* 775 P.2d 427, 430 (Utah App.1989). In general, a requirement that a donee specifically refer to a power of appointment in the exercise thereof is not an ambiguous provision. *See Estate of Eddy v. Wong,* 134 Cal.App.3d 292, 301, 184 Cal.Rptr. 521, 526 (1982). We do not find the trust provisions of Dr. Burgess's will to be ambiguous and therefore apply a correction-of-error standard.

### Merits

■ It is important to note initially that Mrs. Burgess never had title to the property placed in the Marital Trust estate. "Title to the property concerned remains with the donor until the power has been effectively exercised by the donee, at which time title passes through the donee as a conduit to the appointee." *Holzbach v. United Virginia Bank,* 216 Va. 482, 219 S.E.2d 868, 870 (1975). Dr. Burgess's will there-fore controls the final disposition of the trust estate unless Mrs. Burgess properly exercised the power of appointment in compliance with Dr. Burgess's requirements. "When a donor imposes such a requirement, a donee, who enjoys no title to donor's property, can make no valid appointment affecting that property unless [the donee] complies with donor's requirements." *Id.* 219 S.E.2d at 872.

■ When a donor requires that a donee specifically refer to a particular power of appointment in order to exercise it, the donee's failure to specifically refer to the particular power constitutes a failure to execute the power. This issue was addressed by Colorado in *Thompson v. Estate of Smith,* 41 Colo.App. 366, 585 P.2d 319 (1978). In that case, the donor husband granted his wife a power of appointment, *"but only if [her] will specifically refers to this power."* *Id.* 585 P.2d at 320. In *Smith,* the wife devised by will her remaining estate *"including any property in which I hold a power of appointment."* *Id.* at 321. The trial court found that the donee wife intended to exercise the power of appointment and thus determined that the power had been validly exercised. *Id.*

The Colorado Court of Appeals reversed. It recognized that "the question of whether a power of appointment has been validly exercised depends not on the intent of the donee of the power, but on whether the power was exercised in the manner prescribed by the donor, i.e. by making specific reference in her will to this power." *Id.*

> These specific reference clauses have a well reasoned purpose, which is to insure a considered and intentional, rather than an inadvertent exercise of the power. Inadvertent and blind exercise of unknown powers may and often have led to adverse results such as incurring unnecessary estate taxes, giving the property to the wrong people, and making invalid dispositions of the property.

*Id.*

■ A donor may clearly impose restrictions upon the manner in which the power he or she is granting is to be exercised. *Id.* The Colorado appellate court reasoned that, although reference was made by the wife to any property over which she held *a* power of appointment, the trust required specific reference to *"this power."* Since the power of appointment was not exercised in the manner prescribed by the donor, it was ineffective. *Id.*

■ Express language directing the manner whereby a donee may execute a power must be strictly complied with by the donee for there to be a valid and effective appointment. *Holzbach,* 219 S.E.2d at 871. In *In re Estate of Schede,* 426 Pa. 93, 231 A.2d 135 (1967), the Pennsylvania Supreme Court noted:

> For over a hundred years, the law has been clearly settled that strict and literal compliance with the terms of a special power of appointment is absolutely necessary for its valid and effective exercise. That means that the appointing instrument must specifically refer ... to the power which was granted by [donor's] will and which [donee] seeks to exercise and execute.
>
> ....
>
> *The estate appointed is that of the donor, and not of the donee, and in making the appointment the intention of the donor, and not of the donee must prevail ....* "The donor of a power, inasmuch as he is disposing of his own property, may prescribe whatever ceremonies he pleases for its execution; and although these may be perfectly arbitrary, yet, being required by the creator of the power, they can be satisfied only by a strictly literal and precise performance of them."

*Id.* 231 A.2d at 137 (quoting *Slifer v. Beates,* 9 S. & R. 166, 181) (emphasis added). *Accord, Holzbach,* 219 S.E.2d at 871; *Leidy Chem. Found., Inc. v. First Nat'l Bank,* 276 Md. 689, 351 A.2d 129, 132 (1976).

■ Parol evidence that a donee actually intended to exercise a power of appointment, but failed to refer specifically to the power in the will, does not satisfy a donor's requirement that the power be specifically referred to in the will. In *First National Bank of McMinn County v. Walker,* 607 S.W.2d 469 (Tenn.1980), the donee's attorney testified that the donee actually intended to exercise the power of appointment by means of a general exercise of any and all powers of appointment which had been granted to her. *Id.* at 475. The Tennessee Supreme Court held that despite the parol evidence, the donee had not made the specific reference required by the donor and therefore failed to effectively exercise the power. *Id.*

■ Appellees argue that despite the foregoing common-law rule, the Utah Probate Code permits the court to determine whether the power was exercised based upon the donee's, rather than the donor's, intent. Utah Code Ann. § 75–2–610 (1978) provides:

> A general residuary clause in a will, or a will making general disposition of all of the testator's property, does not exercise a power of appointment held by the testator unless specific reference is made to the power or there is some other indication of intention to include the property subject to the power.

This statute clarifies whether a general disposition of property, wherein there is no reference to any power of appointment, operates as an execution of powers of appointment that may have been granted to the testator. This statute does not apply in this case because it does not address the question presented, i.e., whether a donee must execute a power of appointment in the manner dictated by the donor. There is no indication in the statute that the legislature intended to circumscribe a donor's freedom to dictate the manner in which a power of appointment must be executed. A donor has the "right to dispose of his

property as he [sees] fit." *Holzbach,* 219 S.E.2d at 872.

Where, as here, the donor has expressly imposed conditions upon the donee's ability to exercise the power, section 75–2–610 cannot supersede those conditions.[2] *See* section 75–2–603. We conclude that section 75–2–610 may only effect an appointment to the extent the donor has not created limitations in the trust provisions as to how the power is to be executed.

■ This holding is supported by the Editorial Board Comment to section 75–2–610: "This wording permits a court to find the manifest intent if the language of the will interpreted in light of all the surrounding circumstances shows that the donee intended an exercise, *except, of course, if the donor has conditioned exercise on an express reference to the original creating instrument." Id.* (Emphasis added.) The assumption in such cases is that the donor intends the trust property to pass under the trust itself, unless the donee affirmatively exercises the power. *Id.*

We therefore conclude that, even in light of section 75–2–610, the test remains "whether [the] donee *manifested* her intent in the manner prescribed by [the] donor, i.e., by making specific reference 'in her will' to the power granted by [the] donor's will." *Holzbach,* 219 S.E.2d at 871. This conclusion does not, as asserted by the dissent, "prevent[ ] a layperson from effectively exercising such a power of appointment by holographic instrument." All a

layperson would need to do is identify the specific power of appointment when exercising it. This Mrs. Burgess has not done.

Appellants also claim the district court erred in concluding that sufficient evidence was presented to conclude that Mrs. Burgess intended to exercise the general power of appointment. We do not reach this issue because, as we have already established, Mrs. Burgess's intent does not govern in this case. We nevertheless respond briefly to the dissent's arguments regarding Mrs. Burgess's intent.

■ The dissent seeks to apply an equitable exception to the general rule set forth above. *See generally* Restatement of Property § 347 (1940) (a technically insufficient appointment may nevertheless be effective if it "approximates the manner of appointment prescribed by the donor"). The dissent relies upon cases where the donee at least made a general reference to any and all powers of appointment held by the donee,[3] or made clear attempts to exercise the appointment but failed to comply precisely with all of the limitations placed upon the power.[4] In the present case, Mrs. Burgess's codicil does not even contain a general reference. Nor does it contain the terms "power of appointment" or "marital trust" or any other descriptions thereof that might indicate Mrs. Burgess was knowingly attempting to exercise her power.

The trial court found that Mrs. Burgess intended to exercise the power because the

---

**2.** The dissent claims that "Dr. Burgess did not indicate he intended more than to require Mrs. Burgess to purposefully exercise the power." This is simply incorrect. In his will, Dr. Burgess provided that the only way Mrs. Burgess could alter his own disposition of the Marital Trust estate was if she exercised the power of appointment "by making specific reference [in her will] *to said power."* (Emphasis added.) Had he intended only for Mrs. Burgess to "purposefully exercise the power," he would have so stated. Instead, he chose to require her to express her intentions by making specific reference to the power. Furthermore, he emphasized that if Mrs. Burgess did not "complete[ly]

exercise" the power, the Marital Trust assets would pass to appellants.

**3.** *Motes/Henes Trust v. Motes,* 297 Ark. 380, 761 S.W.2d 938 (1988); *Cross v. Cross,* 559 S.W.2d 196 (Mo.App.1977); *First Union Nat'l Bank v. Moss,* 32 N.C.App. 499, 233 S.E.2d 88 (1977).

**4.** *In re Strobel,* 149 Ariz. 213, 717 P.2d 892 (1986) (donee clearly attempted to comply with specific reference requirement but mistakenly referred to an empty testamentary trust rather than the active inter vivos trust); *Estate of McNeill,* 463 A.2d 782 (Me.1983) (donee did not satisfy requirement that power be exercised in

word "Trust" appears at the top of the codicil. The simple appearance of the word "Trust" on a document does not "approximate" the manner of execution prescribed by Dr. Burgess, nor does it establish that Mrs. Burgess was attempting to exercise her power of appointment. The appellants argued below that the codicil was intended to distribute Mrs. Burgess's own inter vivos trusts which she had established and which contained sufficient assets to make the cash gifts set forth in the codicil. Appellants also point to the first sentence of the codicil which states: "After everything's taken care of, what is left is to go as follows," as indicating a desire to amend the residuary clause of the will. The trial court held that Mrs. Burgess intended to replace the will with the codicil, in which case the codicil would not have concerned the Marital Trust estate, but rather Mrs. Burgess's own estate. Suffice it to say, the patent ambiguity of the codicil precludes a clear finding of Mrs. Burgess's intent, and therefore precludes an application of the equitable exception urged by the dissent.[5]

Of course, the donee's intent to exercise the power of appointment must be evident from the document itself. Thus for example, if the donee's will makes "no reference at all to any power," and the donor required "specific reference to the power," the will cannot exercise the power of appointment, even under the equitable exception.

---

testamentary instrument because will intended to exercise power was invalid for lack of witness signature).

**5.** The dissent erroneously indicates that Mrs. Burgess specifically referred to the Marital Trust and the power of appointment. As is evident from the codicil itself, no such references were made.

The dissent also asserts that Mrs. Burgess *bequeathed property covered by the Marital Trust.* There was no express indication in the codicil that the property being distributed was to come from the Marital Trust estate. The cash distributions could have come either from Mrs. Burgess's own inter vivos trusts or her estate. Any conclusion by the trial court that

*In re Strobel,* 149 Ariz. 213, 717 P.2d 892, 897 (1986) (citation omitted). *See also Roberts v. Northern Trust Co.,* 550 F.Supp. 729, 735 (N.D.Ill.1982) ("Where ... evidence of the donee's intent is weak, a liberal construction of the condition of specific reference may well defeat the intentions of both donor and donee.").

## CONCLUSION

Dr. Burgess, as donor of his estate, required that if Mrs. Burgess desired to dispose of the Marital Trust estate in a manner contrary to his own desire that it pass to appellants, she must have specifically referred to the power of appointment he granted to her. Since Mrs. Burgess never specifically referred to the power, we hold that she failed to effectively exercise the power of appointment. Title to the assets of the Marital Trust estate therefore remained in Dr. Burgess's estate. The case is remanded so that the Marital Trust estate may be distributed under the terms of Dr. Burgess's will.

RUSSON, J., concurs.

BILLINGS, Associate Presiding Judge (dissenting):

The issue presented on appeal is whether Mrs. Burgess's holographic codicil validly exercised the power of appointment Dr. Burgess granted to Mrs. Burgess in the Marital Trust. The trial court, after holding an evidentiary hearing, determined that Mrs. Burgess had validly exercised the

---

the codicil described "assets which were subject to the power of appointment" is simply not supported by the text of the codicil.

The final point made by the dissent as evidence of Mrs. Burgess's intent to exercise her power was the fact she dedicated a "full page" of her codicil to the distribution of the "trust." The length of the purported distribution, however, is totally irrelevant to the identity of the assets being distributed. Also, the codicil does not indicate that the subject matter of the second page is any different from the subject matter of the first. Given the cryptic nature of the codicil, it is just as plausible that Mrs. Burgess intended the assets listed on the second page be used to satisfy the bequests on the first page.

power referred to in the Marital Trust. The majority reverses the trial court's decision under what I believe is a hypertechnical application of the law, which effectively contravenes the intent of both Dr. Burgess and his wife as expressed in their donative instruments.

The relevant provision of the Marital Trust states:

Upon the death of Mala P. Burgess, the remaining principal, including any uncollected and/or undistributed income shall be paid over ... [to such] appointees, including her estate, and in any proportions and in any manner as she shall direct by Will in expressly intending to exercise this power by making specific reference therein to said power.

The trial court concluded that Mrs. Burgess intended to exercise the power of appointment granted to her under the Marital Trust. The court based this conclusion on subsidiary findings that the word "trust," written and underlined twice in the codicil, could only refer to the Marital Trust, based upon its contents and the surrounding facts and circumstances; Mrs. Burgess had expressed an intent to exercise her power of appointment by the codicil; and "[o]ne full page of Decedent Mala P. Burgess' Codicil was dedicated to the Marital Trust and its disposition."

The majority concludes that, even if Mrs. Burgess intended to exercise the power of appointment, the exercise was invalid because she did not specifically use the words "power of appointment" in her holographic codicil. The majority correctly states that Dr. Burgess was free to place restrictions on the manner in which Mrs. Burgess could exercise the power of appointment. *See In re Estate of Smith,* 41 Colo.App. 366, 585

P.2d 319, 321 (1978); *Estate of McNeill,* 463 A.2d 782, 784 (Me.1983); *Cross v. Cross,* 559 S.W.2d 196, 200–01 (Mo.Ct.App. 1977); *Holzbach v. United Virginia Bank,* 216 Va. 482, 219 S.E.2d 868, 871 (1975). They then contend Dr. Burgess placed three separate and independent restrictions on Mrs. Burgess's exercise of the power: (1) she must exercise the power by will, (2) she must expressly intend to exercise the power, and (3) she must make specific reference to the "power." They argue that even if Mrs. Burgess satisfied the first two requirements, she failed to satisfy the third. That is, she "never referred to the power." I disagree.

Dr. Burgess's restrictions are fairly read to require Mrs. Burgess to demonstrate in her will that she intended to exercise the power given to her in the Marital Trust by specifically *referring* to the power, not by using the magic words "power of appointment." Mrs. Burgess did specifically refer to the power by captioning the relevant portion of her codicil, "Trust" and by specifically disposing of the property subject to the power in her codicil, as found by the trial court.[1] This reading is consistent with a modern approach to probate law.

The Utah Uniform Probate Code simplifies the execution of wills and its intent is to "validate the will whenever possible." Editorial Board Comment, Utah Code Ann. § 75–2–Part 5 (1978). Accordingly, the only requirements for a valid holographic will are that the signature and material provisions be in the handwriting of the testator, *see* Utah Code Ann. § 75–2–503 (1978), thereby allowing a layperson to make a will without enlisting the services of an attorney. Furthermore, Utah Code Ann. § .75–2–603 (1978) gives priority to the testator's intent over formal rules of con-

---

1. The trial court's Findings of Fact and Conclusions of Law state:

The references to the Mala P. Burgess Marital Trust as contained in the Codicil are sufficiently specific to exercise the power of appointment. Little else can be reasonably interpreted from the language and little else can be understood as to the intention of Decedent

Mala P. Burgess since the assets which were subject to the power of appointment are described.... Decedent Mala P. Burgess' exercise of the power was plainly expressed in the Codicil (and generally implied as well) and *satisfied the specific reference requirement of the Mala P. Burgess Marital Trust.*
(Emphasis added.)

struction: "[t]he intention of a testator as expressed in his will controls the legal effect of his dispositions." The code's approach attempts to eliminate unnecessary ritualistic formality and magic words and is directed toward giving effect to what the testator intends. For example, Utah Code Ann. § 75–2–610 (1978) provides:

A general residuary clause in a will, or a will making general disposition of all of the testator's property, does not exercise a power of appointment held by the testator *unless specific reference is made to the power or there is some other indication of intention to include the property subject to the power.*

*Id.* (emphasis added). Thus, specific reference to a power of appointment in a general testamentary disposition is required merely to demonstrate the testator intended to exercise the power, and specific reference is not even required where there is some other indication of intention. The words "power of appointment" are not necessary to demonstrate such intent.

Where the donor of the power intends to impose requirements other than an indication of the donee's intent to exercise the power, the donor's requirements control over section 75–2–610. *See* section 75–2–603. Contrary to the majority's view, Dr. Burgess stated no intent to require more than that Mrs. Burgess purposefully exercise the power by referring to it.

The majority relies on four cases in deciding Dr. Burgess required Mrs. Burgess to refer to the Marital Trust *and* use the words "power of appointment" in order to exercise the power. Three of the four cases involve general residuary clauses or general property dispositions purporting to bequeath any property over which the testator "may have a power of appointment of whatsoever nature, kind or description." *Holzbach,* 219 S.E.2d at 870; *cf. Smith,* 585 P.2d at 321 ("any property in which I hold a power of appointment"); *In re Estate of Schede* [2], 426 Pa. 93, 231 A.2d 135, 136 (1967) (property "of which I may have a power of appointment"). In these cases,

the testators used the words "power of appointment" but failed to demonstrate that they knew they had such a power, what that power was, and that they intended to exercise it. In the fourth case, the testator did not in any manner refer to a power of appointment and simply bequeathed the remainder of his property, wherever situated, "which [he] may own or have the right to dispose of." *Leidy Chem. Found., Inc. v. First Nat'l Bank,* 276 Md. 689, 351 A.2d 129, 130 (1976).

In contrast, Mrs. Burgess did not use a general, blanket residuary clause to exercise her power. She purposefully handwrote her codicil, referring specifically to the trust granting her the power and to the property over which she had the power of appointment. Thus, I would conclude she did precisely what her husband directed. I agree with the trial court's determination that Mrs. Burgess complied with the requirements Dr. Burgess specified in the Marital Trust.

However, even if Mrs. Burgess did not strictly comply with the requirements, I think the better reasoned approach is to look to evidence of Dr. Burgess's intent in imposing the requirements and Mrs. Burgess's intent in her testamentary dispositions and to give effect to their demonstrated intentions. Cases taking this approach hold a nonconforming exercise to be effective where the donee clearly intended to exercise the power and the defective exercise does not run contrary to the donor's intent. *See In re Strobel,* 149 Ariz. 213, 717 P.2d 892, 899 (1986); *Motes/Henes Trust v. Motes,* 297 Ark. 380, 761 S.W.2d 938, 940 (1988); *McNeill,* 463 A.2d at 784–85; *Cross,* 559 S.W.2d at 208–10; *First Union Nat'l Bank v. Moss,* 32 N.C.App. 499, 233 S.E.2d 88, 94, *review denied,* 292 N.C. 728, 235 S.E.2d 783 (1977).

In applying this approach, the first step is to determine what the donor, Dr. Burgess, intended by requiring specific reference to the power. "In the absence of some indication to the contrary, it can be assumed that the donor 'obviously intended

---

**2.** This case involved a special power of appointment, not a general power of appointment and the court pointed out the distinction. *See Schede,* 231 A.2d at 137.

to assure that the power would be exercised as a deliberate, considerate act, and to prevent an inadvertent exercise of the power by a residuary clause.' " *Roberts v. Northern Trust Co.*, 550 F.Supp. 729, 733 (N.D.Ill., E.D.1982) (quoting *In re Estate of MacLeish*, 35 Ill.App.3d 835, 342 N.E.2d 740, 743 (1976)); *accord Strobel*, 717 P.2d at 899; *Cross*, 559 S.W.2d at 208–09; *Moss*, 233 S.E.2d at 93–94. *But see First Nat'l Bank v. Walker*, 607 S.W.2d 469, 475 (Tenn.1980) (donor's will and facts surrounding its execution demonstrated intent to require more than general reference to power). Dr. Burgess did not indicate he intended more than to require Mrs. Burgess to purposefully exercise the power.

The second step is to look to evidence of the donee's intent to exercise the power of appointment and determine whether the donee's exercise sufficiently complies with the donor's requirements to satisfy the donor's intent. "Where a donee undertakes to exercise a testamentary power of appointment by a validly executed will substantial compliance with the donor's requirements should suffice." *Holzbach*, 219 S.E.2d at 873 (Harrison and Cochran, JJ., dissenting). Parol evidence of the donee's intent to exercise a power, without evidence of such intent within the will, does not amount to substantial compliance with a donor's requirement to specifically refer to the power in the will. Parol evidence is relevant, however, to explain the donee's use of a term in her will (e.g. that the term

"Trust" refers to the donee's power of appointment.) If the donee substantially complies with the donor's requirements and there is evidence demonstrating the donee's intent to deliberately exercise the power, the donee has sufficiently complied with the donor's requirements to satisfy the donor's intent. *See Roberts*, 550 F.Supp. at 735.

Mrs. Burgess complied with Dr. Burgess's requirements. She referred to the trust containing the power in her codicil. She demonstrated her intent to exercise the power of appointment not only by referring to the trust granting her the power, but by specifically bequeathing property covered by the power,[3] by bequeathing property in amounts exceeding her own property,[4] and by dedicating a full page to the trust property controlled by the power and its disposition. Thus, the appointment was not inadvertent, but rather deliberate and intentional, and satisfied Dr. Burgess's purpose.

The approach outlined above is consistent with the probate code's emphasis on testator intent and liberal construction in interpreting wills. Modern probate should allow a person to exercise a testamentary power of appointment without having to pay an attorney, if the person's intention is apparent and the donor's intent is satisfied. I disagree with the majority's technical, artificial construction of "specific reference" that in essence prevents a layperson from effectively exercising such a power of appointment by holographic instrument.

3. Restatement (Second) of Property § 17.4 (1984) states: "If a donee sufficiently identifying property covered by a power, purports to dispose of the property by deed or will, the donee thereby manifests an intent to exercise the power." *See also First Interstate Bank v. Lindberg*, 49 Wash.App. 788, 746 P.2d 333, 338 (1987) ("References in the will to the property subject to the power or to the instrument creating it can supply the necessary intent to exercise the power. This is especially true when the testator's appointed interest is the only interest she can devise.").

The trial court found Mrs. Burgess made specific bequests of Marital Trust property. Supporting this finding are the two references to

the "Trust" in the codicil, the absence of other trusts to which "Trust" could refer, and the specific, separate disposition of most of Mrs. Burgess's personal assets. The majority contends in footnote five that "there was no express indication in the codicil that the property being distributed was to come from the Marital Trust estate. The cash distributions could have come either from Mrs. Burgess's own inter vivos trusts or her estate." In thus contending, the majority ignores the trial court's findings of fact that Mrs. Burgess made specific bequests of property from the Marital Trust in her codicil.

4. *See* Restatement (Second) of Property § 17.5, comment a (1984).

In conclusion, I would affirm the trial court's determination that Mrs. Burgess's holographic codicil complied with the requirements for exercising her power of appointment set forth in the Marital Trust.