In the Matter of the **ESTATE OF Curtiss S. SCARRITT,** Deceased.

**Ryan W. SCARRITT, Petitioner and Appellant,**

v.

**Rodney K. ORTON, Personal Representative and Appellee.**

No. 920284–CA.

Court of Appeals of Utah.

Dec. 31, 1992.

David Nuffer and Scott Awerkamp, St. George, for petitioner and appellant.

Michael M. Later and Gregory M. Hess, Salt Lake City, and Michael W. Park, St. George, for personal representative and appellee.

Before BILLINGS, P.J., and GARFF and GREENWOOD, JJ.

## OPINION

GARFF, Judge:

Petitioner, Ryan W. Scarritt (Ryan), appeals a final order certifying the will of Curtiss S. Scarritt (Testator) as valid, and denying Ryan's petition for partial intestacy. We affirm.

## FACTS

Testator died June 5, 1991, owning both real and personal property, including a ranch near Virgin, Utah. At the time of his death, he was unmarried, and was survived by two sons: Curtiss S. Scarritt, Jr. (Curtiss), and Ryan.

## THE WILL

Prior to his death, Testator executed a seven-page will. Testator numbered the eleven articles one to ten, labeling two of the articles "second."

In the second of the second articles, Testator directs that debts and expenses arising from his funeral and last illness be paid "as may reasonably be convenient." He authorizes his executor with "absolute discretion" to settle any claims made against his estate.

The third article begins as follows:

All the rest, residue, and remainder of my estate, both real and personal, of whatsoever kind and nature and wheresoever the same may be situated of which I shall die seized or possessed to which in any way I may be entitled at the time of my death, with the exception of the Horace S. Scarritt Trust which shall be administered by a Trust Officer of Banker's Trust, New York, New York, I give, devise, and bequeath as follows:

The article then devises the total amount of some certificates of deposit by percentages to specific individuals; it devises the money in a specific account, by amount, to specific individuals or entities; it devises "All race horse related livestock and vehicles" to an individual; it devises "All other

livestock and saddle horses" to an individual. The final section of this article states:

E. The personal property should be divided as follows:

1. To Rod Orton—Black Ebony Sherry Set and a 4-10 shotgun.

2. The distribution of the remaining items of personal property should be determined by Curtiss S. Scarritt, Jr., Rodney K. Orton and James M. Park.

In the fourth article, Testator names appellee, Rodney K. Orton, as personal representative.

In the fifth article, Testator directs that all estate and other taxes "shall be paid out of or charged against my Utah estate ... as if it were a debt and without apportionment."

In the sixth article, Testator devises to Curtiss "all articles of personal, household or domestic use or adornment, ... excluding only such articles of farm and ranch machinery and equipment, together with horses and other livestock, and such personal property as may be selected and distributed pursuant to the provisions of Article Third."

The seventh article directs the personal representative to

borrow monies against my real property located in Virgin, Utah and to pay whatever sums are necessary for the maintenance, upkeep and preservation of my ranch in Virgin, Utah and also the salaries of my employees until such time as the ranch is sold or for a period of time which shall be left to the sole discreation [sic] of my personal representative. All monies borrowed against the real property in Virgin, Utah are to be paid back immediately upon the sale of said property. I authorize my Personal Representative to sell all real property, together with all tangible personal property and livestock included in my estate and not effectively disposed of pursuant to Articles THIRD and SIXTH hereof, at such time or times and upon such terms and conditions as shall seem advisable and to add the proceeds of any such sale to my estate.

The eighth article provides that the will shall be probated subject to Utah law.

The ninth article specifies that Testator makes "no provision for my son, Ryan Winthrop Scarritt, for the reason that he will be well-provided for, following my death, under the will of my father, Horace S. Scarritt."

## PROCEDURE

On July 10, 1991, the district court ordered the will to be informally probated and appointed Orton as personal representative. Two days later, Ryan petitioned for formal probate, for a declaration of partial intestacy, and for supervised administration. Ryan claimed that he, as one of Testator's two sons, was entitled to an intestate share because Testator died partially intestate.

On August 14, 1991, Orton objected to the petition, maintaining that Ryan had no interest in Testator's estate because the will disposed of all Testator's property and manifested an intent to disinherit Ryan.

The court heard oral arguments on August 22, 1991, and issued its memorandum decision on September 5, 1991. The court concluded that Testator died testate because the will disposed of the entire estate. On September 25, 1991, the court entered an order to the same effect. The court certified these orders pursuant to Utah Rule of Civil Procedure 54(b).

Ryan appeals, claiming the court erred in concluding the will disposed of Testator's real and personal property residue.

## WILL CONSTRUCTION

Ryan raises many issues, all of which amount to a claim that the third and seventh articles, when read together, establish that Testator did not intend to dispose of the ranch and the personal property residue.

"The intention of a testator as expressed in his will controls the legal effect of his disposition." Utah Code Ann. § 75-2-603 (1978). Thus, absent any ambiguity, we interpret a will "as a matter of law giving no deference to the interpretation of the

trial court." *In re Estate of Burgess v. Poulsen,* 836 P.2d 1386, 1390 (Utah App.), *cert. denied,* 843 P.2d 1042 (Utah 1992). Further, we interpret a will as a whole, giving meaning "to all of its provisions considered in their relationship to each other." *In re Estate of Wallich v. Wallich,* 18 Utah 2d 240, 420 P.2d 40, 42 (1966).

■ We construe wills "to pass all property which the testator owns at his death including property acquired after the execution of the will." Utah Code Ann. § 75–2–604 (1978). Thus, where a will presents more than one plausible interpretation, we prefer the interpretation that prevents intestacy. *In re Estate of Gardner,* 615 P.2d 1215, 1217 (Utah 1980); *accord, In re Estate of Hunt,* 842 P.2d 872, 873–874 (Utah 1992).

■ The term "property" may include realty: " 'Property' includes both real and personal property or any interest therein and means anything that may be the subject of ownership." Utah Code Ann. § 75–1–201(33) (Supp.1992). Further, the statute governing general statutory construction provides that personal property can include title to property: " 'Personal property' includes every description of money, goods, chattels, effects, evidences of rights in action, and all written instruments by which any pecuniary obligation, right, or title to property is created, acknowledged, transferred, increased, defeated, discharged, or diminished, and every right or interest therein." Utah Code Ann. § 68–3–12(2)(m) (Supp.1992).

Here, the introductory clause of the third article describes its subject matter as "All the rest, residue, and remainder of my estate, both real and personal, of whatsoever kind and nature and wheresoever the same may be situated of which I shall die seized or possessed to which in any way I may be entitled at the time of my death," with the exception of the Horace S. Scarritt Trust. Testator then purports to "give, devise, and bequeath" the subject property. After making a few specific bequests, Testator devises the residuary of his estate: "The distribution of the remaining items of personal property should be determined by

Curtiss S. Scarritt, Jr., Rodney K. Orton and James M. Park." This sentence, when considered in its relationship to the other clauses, particularly to the introductory clause of the third article, manifests an intent to allow the committee of three to distribute all remaining real and personal property.

Ryan claims that the following phrase precludes us from construing the third article as a residuary clause:

I authorize my Personal Representative to sell all real property, together with all tangible personal property and livestock included in my estate and not effectively disposed of pursuant to Articles THIRD and SIXTH hereof, at such time or times and upon such terms and conditions as shall seem advisable and to add the proceeds of any such sale to my estate.

We disagree. The structure and punctuation of this phrase suggest that the clause "included in my estate and not effectively disposed of pursuant to Articles THIRD and SIXTH hereof" modifies the phrase "tangible personal property" and does not modify the phrase "real property."

The entirety of the seventh article supports the general interpretation that Testator intended that the ranch be sold and added to the estate. That is, the seventh article directs the personal representative to borrow against the ranch and to maintain it "until such time as the ranch is sold...." The will then directs the personal representative to pay back these sums "immediately upon the sale" of the ranch.

This interpretation holds when we read the seventh article in the context of the will as a whole because Testator manifests in other portions of the will an intent to sell the ranch. For example, the second article directs the personal representative to pay all of Testator's "just debts, funeral expenses, and expenses of [his] last illness ...". The fifth article provides that "any inheritance, succession, estate, transfer, legacy or duty or tax which shall become payable ... in respect to any property or interest passing under this [will] ... shall be paid out of or charged against my Utah estate in the manner hereinabove provided,

as if it were a debt and without apportionment." The parties do not dispute that the estate lacks sufficient liquid assets to pay these debts. Thus, the will effectively mandates that the personal representative sell the ranch.

In short, the seventh article reveals Testator's intent to devise all his property, including the ranch. We prefer this construction because it is the most plausible of any construction, because it serves to pass "all property which the testator owns at his death," Utah Code Ann. § 75–2–604 (1978), and because it prevents intestacy. *See Gardner,* 615 P.2d at 1217; *Hunt,* 842 P.2d at 874.

In sum, the broad language in the third article's introductory clause, even when read with the seventh article, manifests an intent to dispose of all property.

## CONCLUSION

We therefore affirm the trial court's conclusion that the will manifests Testator's intent that the committee of three dispose of the residue of Testator's real and personal property.

BILLINGS, P.J., and GREENWOOD, J., concur.